ZIMMIE, APPELLANT, *v.* CALFEE, HALTER AND GRISWOLD ET AL., APPELLEES.

[Cite as Zimmie *v.* Calfee, Halter & Griswold (1989), 43 Ohio St. 3d 54.]

(No. 88-314—Submitted March 8, 1989 — Decided May 17, 1989.)

*Miller, Stillman & Bartel, Edward I. Stillman, Willard E. Bartel* and *Jamie R. Lebovitz,* for appellant.

*Squire, Sanders & Dempsey, Thomas G. Hermann* and *Bradley J. Bickett,* for appellees.

DOUGLAS, J.  The sole question in this appeal is whether appellant's legal malpractice action against his attorneys, the appellees, was barred by Ohio's one-year statute of limitations.

The statute of limitations applicable to legal malpractice actions is set forth in R.C. 2305.11(A) which stated, at the time of the commencement of the action herein, in relevant part: "[a]n action for * * * malpractice

* * * shall be brought within one year after the cause thereof accrued * * *."[2]

In 1983, this court adopted the "discovery rule" as defining the date upon which a cause of action accrues and the statute of limitations begins to run in a medical malpractice action pursuant to R.C. 2305.11(A). *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 5 OBR 247, 449 N.E. 2d 438.

In *Skidmore & Hall* v. *Rottman* (1983), 5 Ohio St. 3d 210, 5 OBR 453, 450 N.E. 2d 684, syllabus, this court extended its "discovery rule" holding in *Oliver* to legal malpractice actions. This court held that under R.C. 2305.11(A), a cause of action for legal malpractice accrues and the statute of limitations begins to run when the client discovers, or, in the exercise of reasonable care and diligence should have discovered the resulting injury.

This court, in *Hershberger* v. *Akron City Hosp.* (1987), 34 Ohio St. 3d 1, 516 N.E. 2d 204, established criteria to determine the date of an injury for the purpose of defining when a cause of action accrues in a medical malpractice action. We adopted an approach that requires an inquiry into the particular facts of the action and the following determinations: when the injured party became aware of, or should have become aware of, the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of the need for further inquiry as to the cause of such condition.

Recently, in *Omni-Food & Fashion, Inc.* v. *Smith* (1988), 38 Ohio St. 3d 385, 528 N.E. 2d 941, paragraph two of the syllabus, this court adopted the *Hershberger* factors for determining the accrual date in a legal malpractice action. Furthermore, in paragraph one of the syllabus of *Omni-Food,* this court applied the "termination rule" to legal malpractice actions and held that a cause of action accrues in a legal malpractice action under R.C. 2305.11(A) when the attorney-client relationship for that *particular transaction* or *undertaking terminates* or when the client discovers the resulting damage or injury, whichever occurs later.

The "extent and seriousness of his condition" language in *Hershberger* was further explained by us in *Allenius* v. *Thomas* (1989), 42 Ohio St. 3d 131, 538 N.E. 2d 93. In *Allenius,* we found that a patient becomes or should become aware of the extent and seriousness of his injury when there is a "cognizable event" which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.

We are of the opinion that the same justifications set forth in *Allenius* for determining the date of discovery in a medical malpractice action are equally compelling in the legal malpractice context. Medical and legal malpractice actions should conform to the same standard for determining when a cause of action accrues and when the statute of limitations commences so we do not discriminate "for or against" doctors or "for or against" lawyers. Since 1983 and *Skidmore,* this

---

[2] R.C. 2305.11(A) is applicable to both legal and medical malpractice actions.

court has recognized that the same principles that determine the accrual of the cause of action in medical malpractice claims also govern in legal malpractice actions.

Thus, under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. See *Omni-Food, supra.*

Based on the termination rule elucidated in *Omni-Food,* we find that Zimmie's cause of action for legal malpractice against the appellees accrued in August 1980 when Zimmie terminated his relationship on all subsequent domestic relations matters with Calfee and retained another attorney.

However, this does not complete our inquiry. We must further determine when Zimmie's legal malpractice action accrued under the discovery rule. Then we must compare the accrual dates based on the termination and the discovery rule. Whichever date is later will be the accrual date for the commencement of the statute of limitations in Zimmie's legal malpractice action.

In this case, we find that the cognizable event whereby Zimmie discovered or should have discovered that he was injured by appellees' action and was put on notice of his need to pursue his possible remedies against appellees was on October 13, 1981 when the trial court invalidated the antenuptial agreement. At that time, Zimmie should have realized that the property he brought into his marriage would not be protected from his wife Kathryn in the divorce proceeding, *i.e.,* his monetary exposure in the divorce would be greater since the antenuptial agreement was invalid. When the trial court held that the antenuptial agreement was invalid, Zimmie was put on notice of his need to pursue further remedies against appellees, who had drafted the agreement.

Although Zimmie's damages were not completely ascertainable after the trial court invalidated the antenuptial agreement, Zimmie was appreciably and actually damaged by the trial court decision. After the trial court decision, it is undisputed Zimmie had to make substantial alimony payments to his ex-wife, Kathryn, despite the pending appeals. Additionally, it is further undenied that Zimmie accrued attorney fees litigating the issues of alimony and property division.

In *Allenius,* we stated that we did not believe that an injured person must be aware of the full extent of the injury before there is a cognizable event. Instead, it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that an improper medical procedure, treatment or diagnosis has taken place.

In this case, the trial court's invalidation of the antenuptial agreement was a cognizable event which should have alerted a reasonable person that a questionable legal practice may have occurred.

Adopting a rule of law that a client is entitled to exhaust all appellate remedies before the statute of limitations commences, as appellant suggests, would be counter to our holdings in *Hershberger* and its progeny. In these cases, we found that a factual inquiry into the circumstances of a case establishes when the cause of action

accrues and the period of limitations commences in a malpractice action.

Furthermore, we do not believe that today's holding will undermine attorney-client trust and confidence. The appellees in this case who committed the alleged malpractice were not representing Zimmie in his divorce action at the trial level. As a matter of fact, appellees had not represented Zimmie in his divorce litigation for more than a year before the trial court decision on October 13, 1981. Thus, requiring appellant to sue appellees after the trial court decision would not interfere with the legal representation of Zimmie in the appellate courts in the divorce action.

In order to avoid needless litigation, if Zimmie had timely filed the malpractice action, the trial court could have been requested to stay this malpractice action until there was a final judgment from the appellate courts concerning the validity of the antenuptial agreement. The stay would eliminate any problems created by the possibility that the court of appeals or this court would reverse the trial court judgment, since such a reversal would probably result in Zimmie having no legal malpractice action against appellees.

For the foregoing reasons, we find that the cognizable event which should have caused Zimmie to discover that he had been injured by appellees' actions was when the trial court invalidated the antenuptial agreement on October 13, 1981.

Comparing the accrual date of Zimmie's legal malpractice action under the discovery rule, which is October 13, 1981, with the accrual date under the termination rule, which is August 1980, we find that the accrual date based on the discovery rule is later. Thus, October 13, 1981 is the accrual date for the commencement of the statute of limitations in Zimmie's legal malpractice action.

Under R.C. 2305.11(A), a legal malpractice action must be brought within a year after the cause of action accrued. Since this complaint was filed on June 7, 1985, almost four years after October 13, 1981, the legal malpractice action is barred by Ohio's statute of limitations.

Accordingly, the judgment of the court of appeals which upheld the trial court's order granting a summary judgment in appellees' favor is hereby affirmed.

*Judgment affirmed.*

MOYER, C.J., HOLMES, WRIGHT and RESNICK, JJ., concur.

SWEENEY and H. BROWN, JJ., separately dissent.

SWEENEY, J., dissenting. While I can appreciate the desire of the majority to refine the standards governing legal malpractice actions in a manner that clarifies the accrual date of such causes of action, I am compelled to respectfully dissent from the majority herein because I believe that the "cognizable event" standard is not a satisfactory standard to apply in the legal malpractice context.

The goal of the majority to establish guidelines that do not discriminate "for or against" doctors or "for and against" lawyers is commendable. However, I believe that the logical limit of harmonizing the similarities between medical and legal malpractice actions was accomplished in *Omni-Food & Fashion, Inc.* v. *Smith* (1988), 38 Ohio St. 3d 385, 528 N.E. 2d 941. In my view, today's decision in attempting a further harmonization represents the legal equivalent of comparing apples to oranges. It is my

belief that the "cognizable event" standard should not apply in the legal malpractice area because of the qualitative differences between the two types of actions. Unlike a medical malpractice action, a plaintiff in a legal malpractice action will rarely, if ever, have experienced the type of cognizable events that pain and discomfort encompass. In contrast, the instant cause arguably presents a number of ascertainable events that this court could ascribe as the date the statute of limitations begins to run. Nevertheless, I believe that fairness, as well as a certain sense that the judicial system will arrive at the correct and just result, compels a finding that a legal malpractice action should not accrue until the appellate process has run its course.

It is safe to observe that most legal malpractice actions will not depend on an underlying case to determine when and if a potential legal malpractice action exists. However, in circumstances such as those presented *sub judice,* the alleged legal malpractice is not readily ascertainable until a court decision, in effect, calls attention in some way to the purported malpractice. The majority opinion herein would require a client to institute an action based on legal malpractice at the very first sign of potential malpractice. As indicated earlier, while such a requirement may be desirable in most legal malpractice situations, it is severely misplaced in the situation where, as here, an underlying court case defines the malpractice that allegedly took place.

I foresee at least two problems that the majority decision creates in situations similar to that presented herein. First, using the instant factual situation as an example, what would happen if the invalidation of the antenuptial agreement had been reversed on appeal?—a not uncommon possibility. Do we suggest that the malpractice action be dismissed, or do we hold it in abeyance pending further appeal? What would happen if the invalidation of the antenuptial agreement had been affirmed by the court of appeals but reversed by this court? Obviously, the confusion that would arise under such a scenario would undermine the very goal that the majority opinion seeks to attain, *i.e.,* precision. While some situations will be clearly cognizable as legal malpractice, situations such as that presented herein will not, especially where the basis of the malpractice action is premised largely upon the result of another court case. It is for this reason that I believe that the "cognizable event" standard in legal malpractice actions such as the instant case is both unfair and inappropriate since the basis of the malpractice action can be easily changed, *i.e.,* reversed on appeal.

The second problem I foresee with the majority opinion is that it encourages litigation and potentially discourages attorneys and clients from settling their differences or problems outside the courtroom. While perhaps such a reconciliation was not possible in the instant cause, other situations could be resolved in such a manner.

While I have always been an ardent proponent of enlarging access to the courts to aggrieved citizens who desire their day in court, see, *e.g., Kirchner* v. *Crystal* (1984), 15 Ohio St. 3d 326, 15 OBR 452, 474 N.E. 2d 275; *Mominee* v. *Scherbarth* (1986), 28 Ohio St. 3d 270, 28 OBR 346, 503 N.E. 2d 717, I feel that in the larger sense, litigation should be a last resort for the resolution of disputes, and that the judiciary should encourage parties to settle their disputes short of litigation, where such is a feasible alternative. The majority opinion herein does not enlarge access to the courts in the

manner that the aforementioned cases do; it merely encourages a clogging of court dockets with actions that may very well be baseless.

Unfortunately, the legal malpractice area and the determination of the accrual date for causes of action arising therefrom do not lend themselves to the precision that is readily attainable in other areas of law. Research reveals that the number of approaches implemented by courts to define the accrual date of a legal malpractice action is as many and varied as the numbers of courts themselves. See, generally, Annotation, When Statute of Limitations Begins to Run upon Action against Attorney for Malpractice (1984), 32 A.L.R. 4th 260. Nevertheless, I believe that the soundest approach in cases such as that presented here is one which recognizes that the alleged legal malpractice "* * * is not ascertainable until the appellate process is completed or is waived by a failure to appeal." *Amfac Distribution Corp.* v. *Miller* (1983), 138 Ariz. 152, 154, 673 P. 2d 792, 794. See, also, *Woodruff* v. *Tomlin* (C.A. 6, 1975), 511 F. 2d 1019 (construing Tennessee law). Cf. *Webb* v. *Pomeroy* (1982), 8 Kan. App. 2d 246, 655 P. 2d 465.

Based on the foregoing, I would hold that the alleged legal malpractice did not accrue until the appellate process which invalidated the antenuptial agreement was complete. Therefore, based on our prior decision in *Omni-Food, supra,* I would reverse the decision of the court of appeals and remand the cause to the trial court for further proceedings to evaluate the appropriateness of plaintiff's legal malpractice claim.

H. BROWN, J., dissenting. I respectfully dissent. The majority has grounded its decision upon an analysis of "cognizable event" and the discovery rule as it applies to an invocation of the statute of limitations in malpractice cases. The problem is that the discovery rule is not relevant to a proper resolution of the case before us.

Two requirements must be met to apply the statute of limitations as a time bar to a malpractice action. First, the requisite time must have elapsed following the injury to the plaintiff. Second, the requisite time must have elapsed following a cognizable event leading to the discovery of that injury. The majority has leaped to the second, or discovery, aspect without considering when the injury to the plaintiff occurred.

The claim of malpractice here was that the lawyers failed to attach a schedule of assets to an antenuptial agreement. Because of such failure, the antenuptial agreement was invalidated for non-disclosure. Thus, the injury was the invalidation of the antenuptial agreement.

On October 13, 1981, a trial court invalidated the antenuptial agreement. However, an appeal was taken. If the trial court's determination had been reversed on appeal, there would have been no injury and no cause of action.[3]

---

[3] Whether failure to attach a schedule of assets to an antenuptial agreement constitutes malpractice (the underlying issue) was a close question. The trial court's resolution was but one opinion. Ultimately, the issues were accepted by the Ohio Supreme Court on appeal and cross-appeal as being of public or great general interest.

*Zimmie* v. *Zimmie* (1984), 11 Ohio St. 3d 94, 11 OBR 396, 464 N.E. 2d 142. The appellant, in his brief, makes this persuasive argument:

"*Zimmie reasonably and in good faith believed that the invalidation of the antenuptial agreement was due to error committed by the trial court* * * *. Thus,

There would have been no cause of action for the reason that the antenuptial agreement as drawn by the lawyer would have been valid.

The majority recognizes this when it states that "* * * a reversal would probably result in Zimmie having no legal malpractice action against appellees." Nonetheless, the majority would compel the plaintiff to file his lawsuit even though there may be no cause of action. The majority would resolve the problem by having the malpractice proceedings stayed until the determination is made on whether a cause of action exists. That solution leads to the undesirable result of forcing plaintiffs to burden the courts with malpractice actions following an adverse lower court decision where a reversal of that lower court decision would establish that no cause of action ever existed. A legal cause of action is not a "now-you-see-it, now-you-don't" proposition.

The accrual of a cause of action where the existence of malpractice depends upon court decision is a problem requiring focused analysis. Those cases differ from malpractice cases where the date of injury is a finite, determinable event and the dispute centers on when the injury was discovered.

The majority has not considered the case law applicable to the precise situation before us. While Ohio courts have not addressed the issue, other courts have. In *Bowman* v. *Abramson* (E.D. Pa. 1982), 545 F. Supp. 227, the court dismissed the plaintiff's legal malpractice action because the medical malpractice holding upon which the action was based was on appeal in another court. The court specifically refused to stay the proceeding pending the outcome of the appeal, holding:

"*[T]he discovery rule * * * is only used to toll the statute of limitations* to prevent an injustice, *never to start the statute to create one.* Since the discovery rule is appropriately invoked only when the occurrence rule would lead to an unjust result, *it logically follows that the discovery rule can only apply after an injury has occurred.* * * * [If plaintiff unsuccessfully exhausts his appeal,] [o]nly then will he have suffered an injury to which the law may grant redress." (Emphasis added.) *Id.* at 231.

In *Amfac Distribution Corp.* v. *Miller* (1983), 138 Ariz. 152, 673 P. 2d 792, the Arizona Supreme Court said:

"[T]o state a cause of action [in malpractice], the plaintiff * * * must have sustained some injury or damaging effect from the malpractice * * *. Negligence alone is not actionable; *actual injury or damages must be sustained before a cause of action in negligence is generated.* * * * *[I]n legal malpractice cases, the injury or damaging effect on the unsuccessful party is not ascertainable until the appellate process is completed or is waived by a failure to appeal.*" (Emphasis added.) *Id.* at 153-154, 673 P. 2d at 793-794. "Only when * * * [plaintiff] has sustained damages is he able to sue." *Id.* at 154, 673 P. 2d at 794.

In *Woodruff* v. *Tomlin* (C.A. 6, 1975), 511 F. 2d 1019, 1021, the court held:

---

Zimmie based on case precedent in Ohio and importantly, the Ohio Supreme Court decision in *Hook* v. *Hook* [(1982), 69 Ohio St. 2d 234, 23 O.O. 3d 239, 431 N.E. 2d 667], *undertook a principled and good faith effort to overturn the decision invalidating* *the antenuptial agreement.* Even as early as 1981, in Zimmie's mind and justifiably so, his attorneys did not commit malpractice; rather the Court which threw out the antenuptial agreement committed error." (Emphasis added and footnote deleted.)

"*[N]o cause of action* [for ineffective and improper representation at trial and on appeal] *accrued until after the plaintiffs discovered or could reasonably have discovered the malpractice and until after the judgment of the Circuit Court had become final.* * * * The judgment did not become final until the Court of Appeals decided the appeal and the time to appeal to the Supreme Court of Tennessee had expired." (Emphasis added.)

In *Pioneer Natl. Title Ins. Co.* v. *Andrews* (C.A.5, 1981), 652 F. 2d 439, the court found that a cause of action for legal malpractice arises only after the party suffers legally cognizable damages: "Florida law has long recognized that damages constitute an essential component of a cause of ac-

tion. See 1 Fla. Jur. 2d, Actions §§ 24, 26 (1977). * * * *[T]he Florida statute of limitations begins to run not upon the discovery of a potential cause of action, but only upon the discovery of an existing cause of action.*" (Emphasis added.) *Id.* at 442.

See, also, *Ameraccount Club, Inc.* v. *Hill* (Tenn. 1981), 617 S.W. 2d 876; *Anderson* v. *Anderson* (Ind. 1979), 399 N.E. 2d 391; *Budd* v. *Nixen* (1971), 6 Cal. 3d 195, 98 Cal. Rptr. 849, 491 P. 2d 433; *Marchand* v. *Miazza* (La. 1963), 151 So. 2d 372.

In the case before us, the appellant brought suit within one year of the date on which the existence of an injury arising from possible malpractice was established. His suit was not time-barred. Thus, I respectfully dissent.