OPINION
 STATEMENT OF THE FACTS AND CASE
{¶ 1} On or about August 27, 1998, Appellant sought the legal services of Appellee with regard to filing bankruptcy.
{¶ 2} On September 1, 1998, Appellant met with Appellee again at which time he paid Appellee part of the retainer. Appellee also explained the differences between Chapter 7 and Chapter 13 bankruptcies at that time.
{¶ 3} On or about November 30, 1998, Appellant paid Appellee the remainder of the retainer and $160 for the filing fee for the bankruptcy. Appellant also provided Appellee with a copy of a Complaint in Foreclosure he had received in the mail.
{¶ 4} While there is some dispute as to what form of bankruptcy Appellant had decided upon at that time, both parties agree that Appellant asked Appellee to wait until after the holidays to file the bankruptcy.
{¶ 5} Appellant did not go to the post office to collect any mail after December, 1998, and admits that he did not open the mail he received at his home either.
{¶ 6} On January 27, 1999, a motion for default judgment on the complaint for foreclosure was served upon Appellant by ordinary mail.
{¶ 7} In February, 1999, Appellant and Appellee were both in contact with Wilshire Credit Corporation with regard to making payments on the mortgage to bring it current.
{¶ 8} Appellee advised Appellant that his best course of action would be to file bankruptcy.
{¶ 9} In late March, 1999, Appellant learned from one of his barbershop customers that his home was listed for sheriff's sale.
{¶ 10} Appellant contacted Appellee in April with regard to the status of the bankruptcy and an appointment was scheduled for Appellant to sign the paperwork. Appellant alleges that he told Appellee of the pending sheriff's sale at this time. Appellee denies these allegations.
{¶ 11} A notice dated April 20, 1999, setting the date for sheriff's sale for May 10, 1999, was sent by ordinary mail to Plaintiff's home.
{¶ 12} On May 10, 1999, the sheriff's sale proceeded and Appellant's house was sold for $37,000. (Appellant had no equity in the house and owed $48,107.00 on the mortgage, which was more than the written appraisal).
{¶ 13} On May 26, 1999, Appellant met Appellee at his office to review and sign the bankruptcy paperwork. At said meeting Appellant inquired as the status of the sale of the house. Appellee, after calling the clerks' office, advised Appellee that his house had been sold and that the sale was final. Appellant signed the Chapter 13 Bankruptcy Petition at this time.
{¶ 14} Appellant admitted that he terminated his relationship with Appellee after learning on May 26, 1999, that his house had been sold.
{¶ 15} Appellant admitted that he never spoke to Appellee after May 26, 1999.
{¶ 16} Appellee, unilaterally, contacted the purchaser of Appellant's house and arranged for Appellant to lease same.
{¶ 17} On July 23, 1999, Appellee sent Appellant a letter stating that he would not put forth any further effort on Appellant's case.
{¶ 18} On June 1, 2000, Appellant filed a complaint in the Stark County Court of Common Pleas averring that Appellee committed legal malpractice and breached a contract for legal services.
{¶ 19} On April 30, 2001, a trial commenced in this matter with same resulting in the trial court declaring a mistrial on May 1, 2001.
{¶ 20} Subsequent to the mistrial, the trial court granted leave to Appellee to file a motion for summary judgment.
{¶ 21} Appellee moved for summary judgment on grounds that (a) appellant's action was barred by the statute of limitations; (b) Appellee was not negligent; and (c) the alleged negligence was not the proximate cause of appellant losing his home as the proposed bankruptcy proceedings could not have protected same from foreclosure.
{¶ 22} On July 30, 2001, the trial court granted Appellee's motion for summary judgment on the issue of proximate case, find that appellant failed to show a genuine issue of material fact on such issue for the alleged foreclosure damage. The trial court found that genuine issues of fact precluded the granting of summary judgment on the issue of the statute of limitations.
{¶ 23} It is from this decision that Appellant has filed the instant appeal and Appellee has filed the instant cross-appeal, assigning the following errors for review:
ASSIGNMENTS OF ERROR
 {¶ 24} "THE BELOW COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT AS TO THE PLAINTIFF'S-APPELLANT'S CAUSE WHICH INVOLVED TWO SEPARATE CLAIMS (BREACH OF CONTRACT AND LEGAL MALPRACTICE) BUT WHERE THE PERTINENT MOTION FOR SUMMARY JUDGMENT ONLY ATTEMPTED TO ADDRESS THE LEGAL MALPRACTICE CLAIM AND THUS HAD NO BASES [SIC] FOR SUMMARY JUDGMENT AS TO THE PENDING BREACH OF CONTRACT CLAIM."
 {¶ 25} "THE BELOW COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT WHERE GENUINE ISSUES OF MATERIAL FACT EXISTED THAT WOULD PRECLUDE THE GRANTING OF SAID SUMMARY JUDGMENT."
 CROSS-ASSIGNMENT OF ERROR
 {¶ 26} "THE COURT ERRED WHEN IT FAILED TO DISMISS PLAINTIFF'S LEGAL MALPRACTICE CLAIM AS UNTIMELY."
 STANDARD OF REVIEW
{¶ 27} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.[1] Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
{¶ 28} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[2]
{¶ 29} It is based upon this standard we review appellant's summary judgment claims.
{¶ 30} We will address appellant's assignment's of error out of order
 II.
{¶ 31} Appellant contend that his complaint contained two distinct causes of action: legal malpractice and breach of contract for services. However, all of the allegations in appellant's complaint arose out of appellee's representation of appellant in the underlying bankruptcy. All are based upon appellee's alleged acts or omissions while representing appellant. Hence, all of appellant's claims sound in legal malpractice.Rumley v. Buckingham, Doolittle and Burroughs (Sept. 1, 1998), Franklin App. No. 98APE09-1262, unreported, citing Richardson v. Doe (1964),176 Ohio St. 370, 372. Thus, appellant's cause of action was one for legal malpractice regardless of the characterization of the issues as separate legal claims.
{¶ 32} Based on the above, we find that the trial court did not err in finding that the granting of summary judgment on the issue of legal malpractice disposed of the Appellant's entire complaint.
{¶ 33} Appellant's second assignment of error is overruled.
 CROSS-APPEAL I.
{¶ 34} We will next address Appellee's cross-appeal as we find such to be dispositive of this appeal.
{¶ 35} The singular issue in this cross-appeal is whether appellant's legal malpractice action against his attorney, appellee, was barred by Ohio's one-year statute of limitations. The statute of limitations applicable to legal malpractice actions is contained in R.C. § 2305.11(A), and provided, at the time of the commencement of the action herein, in pertinent part: "[a]n action for . . . malpractice . . . shall be commenced within one year after the cause of action accrued. . . ." This statutory section is applicable to both legal and medical malpractice actions. Zimmie v. Calfee, Halter Griswold
(1989), 43 Ohio St.3d 54, 57, 538 N.E.2d 398.
{¶ 36} In addressing the question of when the statute of limitations begins to run in a legal malpractice action, the court inZimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54,538 N.E.2d 398, stated in its syllabus:
 Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction terminates, whichever occurs later. (Omni-Food and Fashion, Inc. v. Smith (1988), 38 Ohio St.3d 385, applied.)
{¶ 37} In applying this two-pronged test to this case, we first examine the second prong regarding the date in which the attorney-client relationship between appellant and appellee terminated. Under the facts of this case, reasonable minds could only conclude from the undisputed evidence the attorney-client relationship terminated on May 26, 1999, the date when Appellant claims that he learned that his house had been sold.
{¶ 38} During his testimony at the, albeit incomplete, trial in this matter, Appellant stated:
 Question: Mr. Burnett, you told us yesterday that you learned your house had been sold, you said you found that out in late May of 1999; is that correct?
Answer: Yes.
* * *
 Question: Did you feel at that point when you found out the house had been sold, did you feel let down?
Answer: Yes, I did . . .
* * *
 Question: At that time you found out your house had been sold in 1999 in addition to feeling let down, did you feel my client had not performed his professional obligation to you?
Answer: That's why I left his office.
 Question: Did you terminate your relationship at that time?
Answer: Yes, I did.
 Question: Did you feel he had committed legal malpractice at that time?
Answer: Yes, I did.
(T. at 188-190).
{¶ 39} It is appellee/cross-appellant's position the "cognizable event" occurred on May 26, 1999, the date on which appellant/cross-appellee claims to have found out that his house had been sold at sheriff's sale. Appellant never spoke to Appellee again after their meeting on May 26, 1999.
{¶ 40} It is appellant/cross-appellee's position that the unilateral action taken by Atty. Krainess to secure him a lease continued that attorney-client relationship. Appellant/cross-appellee further argues that the attorney-client relationship between himself and Atty. Krainess did not terminate until July 23, 1999, when Atty. Krainess sent him a letter stating that he had arranged for Appellant to rent the house.
{¶ 41} A review of the July 23, 1999, correspondence actually supports Mr. Krainess' position that the relationship was terminated by Appellant on May 26, 1999, wherein he begins the letter by stating [s]ince you refuse to talk with me on the phone."
{¶ 42} The Code of Professional Responsibility, DR 2-110(B)(4) requires that "a lawyer representing a client * * * shall withdraw from employment if: * * * [h]e is discharged by his client." Reid, Johnson,Downes, Andrachik Webster v. Lansberry (1994), 68 Ohio St.3d 570.
{¶ 43} Appellant's legal malpractice action was not filed until June 21, 2000, more than one year from the date the attorney-client relationship terminated between appellant and appellee. As such, we must now examine the first prong of the Zimmie test to determine when the "cognizable event" occurred, which triggered the running of the legal malpractice statute of limitations.
{¶ 44} In Zimmie, supra, at 57, 538 N.E.2d 398, the Ohio Supreme Court explained the standards for determining when a cause of action accrues and when the statute of limitation commences applies equally in both medical and legal malpractice actions. As such, in determining the date in which the "cognizable event" occurred, we look to Allenius v.Thomas (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, a medical malpractice decision for guidance. In Allenius, at 133-134, 538 N.E.2d 93, the Ohio Supreme Court explained:
 "Moreover, we do not believe that a patient [client] must be aware of the full extent of the injury before there is a `cognizable event.' It is enough that some noteworthy event, `cognizable event,' has occurred which does or should alert a reasonable person-patient [client] that an improper medical [legal] procedure, treatment or diagnosis has taken place."
{¶ 45} In applying this standard to the facts of this case, there can be little question that on May 26, 1999, the date when appellant learned his house had been sold because his attorney had not file the bankruptcy petition prior thereto, appellant should have been alerted that his attorney may have failed to properly represent him. Appellant knew the extent of his injury at that time, the "cognizable event" had occurred.
{¶ 46} Accordingly, for the reasons stated above, we find underZimmie, supra, that the statute of limitations in the within case began to run on May 26, 1999, the date on which appellant terminated his attorney-client relationship with appellee based upon his knowledge that his house had been sold and that such sale was final.
{¶ 47} The judgment of the Stark County Court of Common Pleas is hereby affirmed.
By: BOGGINS, J. FARMER, P.J. and WISE, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs to Appellant.
[1] Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36.
[2] Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.