OPINION
{¶ 1} Plaintiffs-appellants, Richard Lintner, Charlotte Lintner and Linda Mason, appeal the decision of the Preble County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Gerald Nuckols and the Law Offices of Arnold Levine, after determining that appellants' legal malpractice action was time-barred. We affirm the decision of the trial court.
 {¶ 2} In April 1995, Gregory Lintner ("decedent") was killed while riding as a passenger in a car that was struck by an oncoming locomotive in Preble County, Ohio. Cheryl Ehrnschwender, an uninsured motorist, was driving the car when the accident occurred.
 {¶ 3} In August 1995, decedent's mother, Charlotte Lintner, as administrator of decedent's estate, filed suit against the Norfolk and Western Railway Company and several of its employees, alleging that the negligence of the railway company's employees caused decedent's death. No action was brought against Ehrnschwender.
 {¶ 4} Norfolk and Western Railway moved for summary judgment. On August 29, 1996, the trial court granted Norfolk and Western Railway's motion finding that Ehrnschwender's failure to yield while crossing the railroad track was the sole cause of the collision. Appellants appealed the decision to this court. We affirmed the decision of the trial court. See Lintner v. Norfolk W. Ry. Co. (1997), 118 Ohio App.3d 838. Appellants appealed that decision to the Ohio Supreme Court, and jurisdiction was denied on July 2, 1997. See Lintner v. Norfolk W. Ry. Co.,79 Ohio St.3d 1450, 1997-Ohio-539.
 {¶ 5} On July 10, 1997, appellees advised appellants in a letter that their case was closed. The Levine firm closed the estate without asserting any uninsured motorist claims on behalf of appellants due to Ehrnschwender's negligence.
 {¶ 6} On November 14, 2000, appellants received a letter from an attorney, George Rogers ("Rogers"), informing them that they had a potential claim against their motor vehicle carrier for uninsured motorist benefits. At the time of the accident, appellants, Richard and Charlotte Lintner, and decedent's sister, appellant Linda Mason, had automobile liability and homeowner's policies in effect with Midwestern Indemnity Co. ("Midwestern").
 {¶ 7} In February 2001, appellants notified Midwestern of their intention to present claims for uninsured motorist coverage pursuant to their automobile liability and homeowner's policies. Midwestern denied the claims on the grounds that appellants had destroyed its subrogation rights against Ehrnschwender by not giving it timely notice of their possible claims before the statute of limitations for bringing an action against Ehrnschwender had expired.
 {¶ 8} In August 2001, appellants brought an action against Midwestern seeking a declaration that they were entitled to uninsured motorist coverage under their automobile liability and homeowner's policies. Midwestern moved for summary judgment. The trial court granted Midwestern's motion, finding that appellants' "failure to preserve Midwestern's subrogation rights against the tortfeasor and failure to notify Midwestern within a reasonable time of any claims constituted a material breach of the contract, precluding coverage." Appellants appealed the decision. We affirmed the decision of the trial court on October 21, 2002. SeeLintner v. Midwestern Ind. Co., Butler App. No. CA2002-04-077, 2002-Ohio-5609.
 {¶ 9} On March 20, 2002, appellants filed a legal malpractice claim against appellees, Gerald Nuckols and the Levine firm, for failing to file the potential Sexton and/or Scott-Pontzer
claims. The trial court dismissed appellants' legal malpractice claim against appellees, finding that it was barred by the statute of limitations. Appellants appeal the decision raising two assignments of error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "The trial court erred in granting defendants-appellees' motion for summary judgment. the review of this issue is de novo."
 {¶ 12} Appellants have advanced four arguments in support of their contention that their claim against appellees was not time-barred. First, appellants argue that the discovery rule as applied to legal malpractice does not "begin to run before a person discovers that the attorneys representing the estate had an obligation to him personally as a wrongful death beneficiary of the deceased and violated a duty of the case." Second, appellants argue that the discovery rule does not "begin to run before a person discovers that the attorney's representation to him that he had no personal claims at the time of such representation was false." Third, appellants argue that the discovery rule does not "begin to run before a person suffers an actual injury by an adverse judicial ruling." Lastly, appellants argue that "the date an attorney representing a person receives a copy of the person's insurance policy * * * [is not] relevant to the application of the discovery rule."
 {¶ 13} The time within which a party must bring a cause of action for legal malpractice is governed by R.C. 2305.11(A), which states that a legal malpractice claim "shall be commenced within one year after the cause of action accrued * * *." InZimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, the Supreme Court of Ohio established the following two-part test to determine when the statute of limitations begins to run on a claim for legal malpractice:
 {¶ 14} "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Id. at syllabus.
 {¶ 15} On November 14, 2000, appellants received a letter from Rogers informing them that they had potential Sexton
and/or Scott-Pontzer claims against their motor vehicle carrier for uninsured motorist benefits. See Sexton v. State Farm Mut.Auto Ins. Co. (1982), 69 Ohio St.2d 431; Scott-Pontzer v.Liberty Mut. Fire Ins., 85 Ohio St.3d 660, 1999-Ohio-292. Following this correspondence, Rogers received appellants' auto and home owner's policies. Appellants entered into a contract with Rogers for representation on the potential Sexton and/orScott-Pontzer claims. By February 26, 2001, Rogers had reviewed the policies and contacted Midwestern outlining the basis of appellants' claims and suggested an award for damages. After correspondence between Midwestern and Rogers, Midwestern informed Rogers on March 16, 2001, that they "do not agree that any UM [uninsured motorist] coverage for this claim" exists.
 {¶ 16} The trial court determined that Rogers' solicitation letter informed appellants that they had potential Sexton
and/or Scott-Pontzer claims. The trial court also found that the solicitation resulted in two contracts for representation executed on December 31, 2000 and January 29, 2001. Furthermore, the trial court noted that appellants "certainly knew, as a result of the solicitation, that their former counsel did not file [Sexton and/or Scott-Pontzer] claims."
 {¶ 17} Pursuant to Zimmie, we must determine the date on which appellants discovered or should have discovered that their injury was related to their attorney's alleged malpractice. Appellants have argued that pursuant to Ohio's discovery rule as enunciated in Zimmie, the statute of limitations on their legal malpractice claim did not begin to run until they were "appreciably and actually damaged" when the Butler County Court of Common Pleas determined, in early 2002, that appellants had no coverage under their policies due to the failure of the Levine firm to timely present their claims to Midwestern. As a result, appellants argue that their claim of legal malpractice filed on March 20, 2002 was not time-barred.
 {¶ 18} However, as enunciated in Zimmie, when applied to matters of legal malpractice, Ohio's discovery rule provides that a "cognizable event" that either should have or actually did alert the client to the fact that he might have been injured by his attorney's representation triggers the statute of limitations. Zimmie, 43 Ohio St.3d at 58. In such context, a "cognizable event" is an event that puts a reasonable person on notice "that questionable legal practice may have occurred" and that the client might need to pursue remedies against his attorney. Id.
 {¶ 19} In Zimmie, the supreme court stated that legal and medical malpractice claims should use the same standard to determine when a "cognizable event" has occurred and thus when the statute of limitations has started to run. Id. at 57. A critical element of the court's rationale in Zimmie was first articulated in the medical malpractice case Allenius v. Thomas
(1989), 42 Ohio St.3d 131. In Allenius, the court held that an injured person need not be aware of the full extent of his injuries before there is a recognized "cognizable event" triggering the statute of limitations. Id. at 133-134; see, also,Zimmie, 43 Ohio St.3d at 58. Rather, the court felt that once the "cognizable event" had occurred, the person was on notice of "the necessity for investigation and pursuit of her remedies * * *." (Citations omitted.) Allenius, 42 Ohio St. at 134.
 {¶ 20} The facts of the instant appeal reveal that, although appellants were not completely aware of the extent of their alleged injuries resulting from appellees' alleged legal malpractice, they "certainly knew, as a result of the solicitation, that their former counsel did not file [Sexton
and/or Scott-Pontzer] claims." This knowledge, along with appellants contracting with Rogers to represent them in theirSexton and/or Scott-Pontzer claims, and Midwestern's denial of appellants' claims on March 16, 2001, indicate that appellants knew or should have known that appellees had engaged in legal malpractice and had notice that they were appreciably and actually damaged by appellees before their case was closed on July 10, 1997.
 {¶ 21} As a result, appellants should have investigated appellee Nuckols' legal representation and pursued potential remedies. See id.; see, also, Zimmie, 43 Ohio St.3d at 57-58. Had appellants investigated appellees' representation when they received the Rogers letter on November 14, 2000, it is reasonable to assume that they would have discovered that the statute of limitations to file their uninsured motorist claims had run. They could then have pursued a timely legal malpractice action against appellees based on their failure to pursue uninsured motorist claims.
 {¶ 22} Given the particular facts involving the solicitation letter and Rogers' subsequent representation of appellants, we find that March 16, 2001 was the date when appellants knew or should have known that their former counsel had breached an obligation to them. At that time, appellants knew that their counsel's representations were inaccurate, and that they were appreciably and actually damaged by their former counsel's failure to file Sexton and/or Scott-Pontzer claims. That injury was the "cognizable event" that put appellants on notice and triggered the statute of limitations pursuant to the Zimmie
test.
 {¶ 23} Comparing the "cognizable event" date of March 16, 2001 to the termination of the attorney-client relationship date of July 10, 1997, the later of the two events is clearly March 16, 2001. Therefore, the statute of limitations for appellants' claim of legal malpractice began to run on March 16, 2001. SeeOmni-Food Fashion, Inc. v. Smith (1988), 38 Ohio St.3d 385. As a result, appellant's March 20, 2002 claim of legal malpractice was not commenced within the one year statute of limitations pursuant to R.C. 2305.11(A) and their claim was time-barred. It follows that appellees' motion for summary judgment was properly granted. Consequently, appellants' first assignment of error is overruled.
 {¶ 24} Assignment of Error No. 2:
 {¶ 25} "The trial court erred in overruling plaintiffs-appellants' motion for partial summary judgment. the review of this issue is de novo."
 {¶ 26} Appellants have advanced two arguments in support of their contention that the trial court should have granted their motion for partial summary judgment. Appellants first argue that "the attorney representing the administrator of the estate in a wrongful death action owe[s] a duty to the wrongful death beneficiaries who are in privity with the administrator." Appellants also argue that "an attorney breach[es] his duty of care when he fails to advise his client about and assert a cause of action related to such representation that Ohio case law holds is viable."
 {¶ 27} Given our disposition in the first assignment of error, that appellants' claim for legal malpractice is time-barred, appellants' second assignment of error is overruled.
Judgment affirmed.
Walsh and Valen, JJ., concur.