[Cite as *Talmon v. Piszczek*, 2011-Ohio-4881.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

KENNETH TALMON

    Appellant

    v.

GERALD PISZCZEK, et al.

    Appellees

C.A. No.    10CA0128-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    10CIV0248

DECISION AND JOURNAL ENTRY

Dated: September 26, 2011

DICKINSON, Judge.

INTRODUCTION

**{¶1}** Kenneth Talmon retained Eric Hall and Gerald Piszczek to file a law suit seeking pension benefits to which he thought he was entitled. Messrs. Hall and Piszczek sued the Central States Southeast and Southwest Areas Pension Fund and Local 407 of the International Brotherhood of Teamsters in the United States District Court for the Northern District of Ohio on Mr. Talmon's behalf. They eventually dismissed the claim against Local 407, and the district court granted judgment to Central States. Messrs. Hall and Piszczek appealed Mr. Talmon's case to the United States Court of Appeals for the Sixth Circuit and, after that court affirmed, unsuccessfully sought certiorari in the United States Supreme Court. Over two years after the Supreme Court denied certiorari, Mr. Talmon filed this malpractice action against Messrs. Hall and Piszczek in the Medina County Common Pleas Court. That court granted summary judgment to Messrs. Hall and Piszczek, having determined that there were no genuine issues of

material fact and that the statute of limitations had expired before Mr. Talmon sued them. This Court affirms because there are no genuine issues of material fact and the one-year statute of limitations applicable to Mr. Talmon's malpractice claim expired before he filed his complaint in this case.

## BACKGROUND

{¶2} Mr. Talmon worked as a truck driver from August 1963 until February 1968. During that time, he was a member of Local 293 of the International Brotherhood of Teamsters. Members of Local 293 participated in a pension fund known as the Local Union 293 Pension Fund. It is unclear whether Mr. Talmon worked as a truck driver from February 1968 until September 1969, but he did from September 1969 until July 1980, when he was laid off. From September 1969 until July 1980, he was a member of Local 407. Members of Local 407 participated in the Central States Pension Fund.

{¶3} Mr. Talmon apparently first sought information from Central States in 1981 about the number of years of service credit he had accumulated toward a pension, and Central States told him he had 10.75 years. He again sought information from Central States about his years of service in 1993, and Central States again told him he had 10.75 years and that, because he had left covered employment before age 50, he needed 30 years of service to qualify for a full pension. Central States apparently also explained that time as a Teamster with a non-Central States local, such as Local 293, could be added to his Central States time to satisfy the 30-year requirement, and, in that way, he could qualify for a partial pension from Central States and, presumably, a partial pension from the plan in which the non-Central States local participated.

{¶4} Mr. Talmon applied to Central States for a partial pension in 1993, and Central States sought information from Local 293 regarding how much service he had accumulated

during his membership in that local. Prior to hearing from Local 293, however, Central States told Mr. Talmon that he did not qualify for a partial pension because, even if he received credit for all the time between 1962 and 1969, he still would not have a total of 30 years of service. Central States did tell him that he qualified for a smaller vested pension based on his time with Central States. Eventually, Local 293 told Central States that Mr. Talmon was not entitled to any years of service for his time as a member of that local because he had a break-in-service of over a year between February 1968 and September 1969.

{¶5} Mr. Talmon continued to discuss his pension benefits with Central States between 1994 and 2002. In 2001 or 2002, he retained a lawyer to appeal Central States' decision regarding his benefits. As part of that appeal, he argued that he was entitled to credit for time during 1968 and 1969 and for the time between his layoff in 1980 and his former employer's bankruptcy in 1985. Central States' Appeals Committee rejected his appeal, determining that, even if he were awarded credit for all the time to which he claimed he was entitled, he would not qualify for a partial pension because he would still have less than 30 years of service.

{¶6} Mr. Talmon appealed the appeals committee's decision to Central States' Board of Trustees. In March 2005, the trustees awarded him some additional credit for the months of July and August 1969, determined he was not entitled to any credit for the time between 1980 and 1985, and concluded that he was not entitled to a partial pension because he did not have 30 years of qualifying time.

{¶7} In April 2005, Mr. Talmon retained Messrs. Hall and Piszczek to investigate and research whether he had a viable claim for additional pension benefits. He paid them a $2000 retainer and agreed that they would bill against the retainer at the rate of $150 an hour. He also agreed that, if they filed a lawsuit on his behalf, he would deposit another $2000 with them.

{¶8}   In May 2005, Messrs. Hall and Piszczek filed a three-count complaint on behalf of Mr. Talmon against Central States and Local 407 in the United States District Court for the Northern District of Ohio.  By the first count, they alleged that Central States had breached its fiduciary duty by failing to pay Mr. Talmon pension benefits "according to the pension plan."  By the second count, they alleged that Central States had failed to comply with the benefit plan in calculating Mr. Talmon's entitlement to pension benefits.  Finally, by the third court, they alleged that Local 407 had breached a duty of fair representation it owed Mr. Talmon.

{¶9}   Local 407 answered Mr. Talmon's complaint and, apparently, sent Messrs. Hall and Piszczek a motion for sanctions it proposed filing against them and Mr. Talmon.  In the memorandum in support of the proposed motion, Local 407 asserted that the complaint against it contained "baseless contentions which are patently unsupported in fact or law."  In particular, Local 407 asserted that "[t]here is no [collective bargaining agreement] provision which ever existed between Defendant Truck Drivers Union Local 407 and any employer requiring the Union to represent any union member, including without limitation the Plaintiff Kenneth Talmon regarding benefit claims under his Central States pension."  Messrs. Hall and Piszczek voluntarily dismissed Mr. Talmon's claim against Local 407 with prejudice.  Mr. Talmon has asserted that he did not know about that dismissal until after the United States Supreme Court denied certiorari over two years later.

{¶10}  Central States moved for dismissal of the first count of Mr. Talmon's complaint and moved for judgment on the second count.  The district court filed a 14-page opinion on January 6, 2006, in which it ruled on Central States' motions.  The district court concluded that the first count, breach of fiduciary duty, should be dismissed on alternative grounds.  First, it determined that the Employee Retirement Income Security Act does did not provide an

individual remedy for breach of fiduciary duty to someone in Mr. Talmon's position. Second, it determined that, even if Mr. Talmon could have brought a cause of action for breach of fiduciary duty, the statute of limitations for that cause of action would have expired, at the latest, in 1996, nine years before he filed his complaint. The district court construed Mr. Talmon's second count as a request that it review the administrative record regarding his entitlement to additional pension benefits. It determined that, inasmuch as the Central States Pension Fund Trust Agreement provides the trustees of the fund discretion to construe the plan documents, adopt rules and regulations administering the fund, and make decisions regarding claims for benefits, its review of the administrative record was limited to determining whether Central States' denial of additional benefits was arbitrary and capricious. It reviewed the administrative record, found that Central States' denial of additional benefits was based on the plan documents, and concluded that its actions were not arbitrary and capricious. Accordingly, it entered judgment on behalf of Central States and against Mr. Talmon on both the remaining counts of his complaint.

{¶11} In January 2006, Mr. Talmon retained Messrs. Hall and Piszczek to appeal the district court's decision to the United States Court of Appeals for the Sixth Circuit. He paid an additional retainer of $3000 and agreed that time would be billed against that retainer at the rate of $195 per hour. Apparently, Messrs. Hall and Piszczek's argument on appeal was limited to an assertion that the district court should have applied a de novo standard of review to Central States' administrative decision. In its opinion, the appellate court wrote that Mr. Talmon "offer[ed] no legal or factual support for his contention that the district court or this court should review the administrator's decision de novo." It affirmed the district court's decision in May 2007.

{¶12} Mr. Talmon then retained Messrs. Hall and Piszczek to seek certiorari in the United States Supreme Court. He apparently paid them a flat fee of $5500 for preparing the request for certiorari. The Supreme Court denied certiorari on October 9, 2007. Mr. Talmon testified at his deposition in this case that he picked up his file from Messrs. Hall and Piszczek in late October or early November 2007 and that they did no legal work for him after that time.

{¶13} Mr. Talmon testified in his deposition in this case that he was unhappy with Messrs. Hall and Piszczek at the time he picked up his file because they would not pursue a claim against Local 407. He further testified that someone, he could not remember whom, suggested they had committed malpractice and that he should contact the Medina County Bar Association. He filed a grievance against Mr. Hall with the Medina County Bar Association on October 7, 2008. In that grievance, he asserted that Mr. Hall had dismissed his claim against Local 407 without his knowledge.

{¶14} The Bar Association's Grievance Committee requested that Natalie Grubb, a member of the bar, review Mr. Talmon's file and issue an opinion letter regarding it. Ms. Grubb sent Mr. Talmon a six-page letter on February 14, 2009, in which she recited what had occurred regarding Mr. Talmon's lawsuit against Central States and Local 407. In her letter, she listed five "[a]reas of [c]oncern": Hybrid Claim; Statute of Limitations; Notice of Dismissal; Jury Demand; and Punitive Damages. She opined that Mr. Talmon's action against Central States and Local 407 was a proper "Hybrid Breach of Duty Action." She further opined that the statute of limitations on his breach of fiduciary duty claim expired on July 21, 1984, over 20 years before Messrs. Hall and Piszczek filed his complaint in district court. She allowed, however, that, although it was "a stretch," "one can argue that the statute of limitations did not begin to run until March 30, 2005[,] when Talmon received the Determination Letter by the Pension Fund

explaining why he only qualified for a Vested Pension." She opined that the statute of limitations on Mr. Talmon's claim that Central States had failed to comply with the benefit plan, the second count of his federal complaint, had expired on July 21, 1991, over 13 years before Messrs. Hall and Piszczek filed his district court complaint. She classified Messrs. Hall and Piszczek's dismissal of Local 407 with prejudice as a "troubling event," writing that, "[s]ince Talmon dismissed Local 407 it would be impossible for Talmon to prove his case against Local 407." Finally, she noted that, although Messrs. Hall and Piszczek included both a jury demand and a request for punitive damages in the complaint they filed in district court, the Employee Retirement Income Security Act allows for neither.

{¶15} On December 16, 2009, Ms. Grubb sent Mr. Talmon a second letter in which she explicitly told him that "it is clear that you have a viable case for legal malpractice." She wrote that she does not handle malpractice actions, but suggested two law firms that do. Finally, she cautioned that the "one year statute of limitations on attorney malpractice will run out on February 14, 2010," one year following her earlier opinion letter to him.

{¶16} Mr. Talmon commenced this lawsuit against Messrs. Hall and Piszczek by filing a pro se complaint on February 12, 2010. A lawyer subsequently entered an appearance on his behalf and filed an amended complaint. Messrs. Hall and Piszczek eventually moved for summary judgment, asserting that the statute of limitations had expired prior to Mr. Talmon filing his complaint. The trial court determined that there were no genuine issues of material fact and that the statute of limitations had expired, at the latest, on October 7, 2009, one year after Mr. Talmon filed his grievance with the bar association and over four months prior to the date on which he filed his complaint in this case.

DISCUSSION

**{¶17}** Mr. Talmon's sole assignment of error is that the trial court incorrectly entered summary judgment against him based on the statute of limitations. Specifically, he has argued that the one-year statute of limitations applicable to his malpractice claim did not start to run until he received Ms. Grubb's opinion letter on February 14, 2009, and that, therefore, his pro se complaint, which he filed on February 12, 2010, was timely.

**{¶18}** Under Section 2305.11(A) of the Ohio Revised Code, an action for attorney malpractice must be commenced within one year after the cause of action accrues. In *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St. 3d 54, syllabus (1989), the Ohio Supreme Court held that, "[u]nder R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later."

**{¶19}** The parties are in agreement that the attorney-client relationship between Mr. Talmon and Messrs. Hall and Piszczek ended when he picked up his file in late October or early November 2007. They disagree, however, about when Mr. Talmon discovered or should have discovered that he suffered injury related to Messrs. Hall and Piszczek's acts or failures to act.

**{¶20}** Mr. Talmon has acknowledged that, at least by the time he filed his grievance against Mr. Hall with the Medina County Bar Association on October 7, 2008, he suspected that Messrs. Hall and Piszczek had done something wrong by dismissing his claim against Local 407 without his knowledge. He has argued, however, that we should disregard that belief, because he now recognizes that dismissing that claim was not a breach of duty because he never had a valid

claim against Local 407. According to him, Messrs. Hall and Piszczek's breach of duty to him was not the dismissal of Local 407; it was their failure to determine, prior to filing the complaint in district court, that his claims against Central States and 407 could not succeed. Specifically, he has argued that "[t]hey did not adequately investigate [Employee Retirement Income Security Act] law, particularly the applicable statute of limitation, which had commenced to run in 1981. Thus, they breached their contractual duty owing to Talmon and caused injury to Talmon by charging and accepting $2000 in legal fees to file an unwinnable case in the United States District Court, by charging and accepting $3000 to pursue a frivolous appeal to the Sixth Circuit Court of Appeals, and by charging and accepting $5500 for filing a frivolous petition for a writ of certiorari to the United States Supreme Court."

{¶21} According to Mr. Talmon, "[a] mere suspicion by the client that his attorney may have done something wrong should not cause an action for legal malpractice to accrue." Rather, according to him, the client must have an understanding of what the lawyer did wrong. In regard to when Mr. Talmon knew the lawsuit Messrs. Hall and Piszczek filed on his behalf never had a chance of succeeding, he has asserted that "[t]here is no possible way that [he], as a reasonably prudent client, could have known that he had no chance to prevail at the time he employed Hall and Piszczek to pursue his [Employee Retirement Income Security Act] case, until he was told so by Attorney Natalie Grubb."

{¶22} The plaintiff in *Zimmie v. Calfee, Halter and Griswald*, 43 Ohio St. 3d 54 (1989), William Zimmie, had retained Calfee in 1963 to draft an antenuptial agreement for him and his then future wife. In 1981, as part of a divorce action, the domestic relations court declared the antenuptial agreement invalid. The court of appeals affirmed the trial court's decision in 1983, and the Ohio Supreme Court affirmed the appellate decision on June 13, 1984. Mr. Zimmie sued

Calfee on June 7, 1985, and Calfee moved for summary judgment based on the statute of limitations. The trial court granted Calfee's motion, the appellate court affirmed, and Mr. Zimmie appealed to the Ohio Supreme Court.

**{¶23}** Although Calfee had represented Mr. Zimmie at the beginning of the divorce action, it had withdrawn from that representation prior to the domestic relations court invalidating the antenuptial agreement. The issue before the Supreme Court, therefore, was limited to whether the cognizable event for purposes of the statute of limitations was the trial court's decision, which occurred more than a year before Mr. Zimmie filed his malpractice action, or the Supreme Court's affirmance of that decision, which occurred less than a year before he filed it. The Supreme Court determined that it was the trial court's decision: "[W]e find that the cognizable event whereby Zimmie discovered or should have discovered that he was injured by [Calfee's] action and was put on notice of his need to pursue his possible remedies against [Calfee] was on October 13, 1981[,] when the trial court invalidated the antenuptial agreement. At that time, Zimmie should have realized that the property he brought into his marriage would not be protected from his wife . . . in the divorce proceeding, i.e., his monetary exposure in the divorce would be greater since the antenuptial agreement was invalid. When the trial court held that the antenuptial agreement was invalid, Zimmie was put on notice of his need to pursue further remedies against [Calfee], who had drafted the agreement." *Zimmie*, 43 Ohio St. 3d at 58.

**{¶24}** The question in this case is when Mr. Talmon was put on notice of his need to pursue further remedies against Messrs. Hall and Pizczek. He has argued that it wasn't until Ms. Grubb's letter and has cited *Crystal v. Wilsman*, 151 Ohio App. 3d 512, 2003-Ohio-427, as support for that argument. Assuming that *Crystal* was correctly decided, it does not assist Mr.

Talmon because it does not stand for the proposition that the statute of limitations on a client's cause of action based on a mistake by his or her lawyer does not begin to run until the client suspects that specific mistake. Rather, it stands for the proposition that the statute begins to run when the client suspects any prejudicial mistake and is therefore put on notice of the need to pursue further remedies against the lawyer.

{¶25} The defendant in *Crystal*, James Wilsman, had represented Susan Crystal in her divorce during 1991, which ultimately ended in a settlement agreement. Ms. Crystal's former husband had been a partner in a law firm at the time of the divorce. She later acknowledged that she was displeased with her lawyer at the conclusion of the divorce proceedings and had felt that her former husband had deceived her. Seven years later, in 1998, she had a conversation with her cousin, an experienced domestic relations lawyer, in which the cousin asked her about her former husband's pension. Although she ultimately discovered that her former husband had not had a pension at the time of the divorce, her cousin's question caused her to consult a lawyer who reviewed the file from her divorce case and advised her that Mr. Wilsman may have committed malpractice by not pursuing her former husband's interest in his law firm. She filed a malpractice claim against Mr. Wilsman, and the trial court granted summary judgment in his favor based on the statute of limitations. She appealed, and the Eighth District Court of Appeals, in a two-to-one decision, reversed. The majority determined that the cognizable event for purposes of the statute of limitations was Ms. Crystal's conversation with her cousin. The dissenting judge disagreed, writing that the cognizable event had been the entry of the divorce in 1991. That judge noted that Ms. Crystal had acknowledged that she felt at the time of the divorce that she had been "screwed" and had believed that her husband had hidden assets. *Crystal v. Wilsman*, 151 Ohio App. 3d 512, 2003-Ohio-427, at ¶22 (Cooney, J., dissenting).

What is significant for this case is that even the majority did not suggest that the cognizable event had not occurred until Ms. Crystal's new lawyer examined the divorce file and discovered Mr. Wilsman's failure to pursue her former husband's interest in his law firm. Mr. Talmon's argument, however, is that the cognizable event in this case did not occur in this case until he received Ms. Grubb's letter, which he says told him he "had no chance to prevail at the time he employed Hall and Piszczek to pursue his . . . case."

{¶26} Just as in *Crystal*, according to Mr. Talmon, his initial belief about how Messrs. Hall and Piszczek had breached their duty to him proved incorrect. The cognizable event in *Crystal*, according to the majority opinion, was Ms. Crystal's incorrect belief that Mr. Wilsman had breached a duty to her by failing to pursue a non-existent pension plan. At the time Mr. Talmon retrieved his file, reviewed it, and discovered that Messrs. Hall and Piszczek had dismissed his claim against Local 407 without telling him, he believed they had breached their duty to him by doing so. He now says that was not a breach of duty. Regardless, just as Ms. Crystal's mistaken belief was the cognizable event that led her to consult an attorney, Mr. Talmon's belief about Local 407, which he now says was mistaken, should have led him to consult a lawyer. In fact it did lead him to file a grievance with the Medina Bar Association. Under *Crystal*, the day on which he filed that grievance, October 7, 2008, was, at the latest, the day on which his cause of action accrued. Under the facts of this case, however, it is more reasonable to conclude that his cause of action actually accrued in late October or early November 2007.

{¶27} Mr. Talmon's theory in this case is that Messrs. Hall and Piszczek breached their duty to him by pursuing a claim against Central States that could not succeed. The opinion the district court filed on January 6, 2006, made it clear that he did not have a valid claim against

Central States for breach of fiduciary duty or additional pension benefits. Review of that opinion leaves no doubt that Mr. Talmon had only a frivolous claim against Central States at the time Messrs. Hall and Piszczek filed his lawsuit. In fact, that opinion is clearer about that than is Ms. Grubb's opinion letter, which Mr. Talmon admits put him on notice regarding Messrs. Hall and Piszczek's alleged malpractice. Accordingly, assuming that Messrs. Hall and Piszczek's filing of a lawsuit on which they could not succeed was malpractice, as argued by Mr. Talmon, the filing of the district court's opinion was the cognizable event that put him on notice that he would need to pursue further remedies against them. Of course, they still represented him on his claim against Central States until he picked up his file in late October or early November 2007. The one year statute of limitations would not have begun to run, therefore, until then. Even if it is assumed that Mr. Talmon did not read the district court's opinion until he retrieved his file and that the cognizable event was his reading it instead of the court's filing it, the date of the cognizable event would have been the same as the date on which the attorney-client relationship ended, in October or November 2007. Accordingly the one-year statute of limitations expired before Mr. Talmon filed his complaint on February 12, 2010. There is no genuine issue of material fact, and Messrs. Hall and Piszczek are entitled to judgment as a matter of law. Mr. Talmon's assignment of error is overruled.

## CONCLUSION

{¶28} Mr. Talmon's assignment of error is overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR

APPEARANCES:

JOHN L. WOLFE, Attorney at Law, for Appellant.

TIMOTHY D. JOHNSON and GREGORY E. O'BRIEN, Attorneys at Law, for Appellees.