[Cite as *Rayess v. McNamee*, 2014-Ohio-2210.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| M. BASSEM RAYESS | : | |
| | : | Appellate Case No.    25915 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No.   12-CV-4284 |
| v. | : | |
| | : | |
| CYNTHIA P. McNAMEE, et al. | : | (Civil Appeal from |
| | : |  Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 23rd day of May, 2014.

. . . . . . . . . . .

M. BASSEM RAYESS, P. O. Box 293166, Kettering, Ohio 45429
       Plaintiff-Appellant

NEIL F. FREUND, Atty. Reg. No. 0012183 and LINDSAY M. JOHNSON, Atty. Reg. No.
0077753, Fifth Third Center, 1 S. Main Street, Suite 1800, Dayton, Ohio 45402
       Attorneys for Defendants-Appellees

. . . . . . . . . . . .

HALL, J.

{¶ 1}     Bassem Rayess appeals pro se from the trial court's denial of his request for a stay, its dismissal of his legal-malpractice complaint on statute-of-limitation grounds, and its denial of his motion for exemption from court costs.

{¶ 2} Rayess advances four assignments of error. First, he contends the trial court erred in denying him a default judgment and allowing appellees Cynthia McNamee and the law firm of Pickrel, Schaeffer, and Ebeling (PS&E) to file an answer or otherwise respond. Second, he claims the trial court erred in denying his motion to extend a confidentiality order that had been issued in another case. Third, he argues that the trial court erred in sustaining the appellees' motion to dismiss on statute-of-limitation grounds. Fourth, he asserts that the trial court erred in denying his motion for exemption from court costs.

{¶ 3} Rayess is a graduate of a foreign medical school. He came to the United States in 1991 seeking a medical residency. To be eligible, he was required to pass the United States Medical Licensing Examination. In 1993, Rayess failed the test, which was administered by the Educational Commission for Foreign Medical Graduates. He claimed the existence of a discriminatory irregularity in the testing procedure, and he hired PS&E to write a complaint letter to the Commission. McNamee, who then was an associate with PS&E, wrote the letter. Rayess received a response from the Commission that he deemed unsatisfactory. Thereafter, on January 4, 1994, PS&E terminated the attorney-client relationship.

{¶ 4} Rayess filed the present legal-malpractice action against PS&E and McNamee more than eighteen years later on June 12, 2012. According to his complaint, McNamee's malpractice included "improper preparation of the legal complaint letter to ECFMG, failing to investigate or failing to advise the Plaintiff to investigate the University of Cincinnati's involvement in the administration of the United States Medical Licensing Exam Part 1 in Cincinnati, Ohio on September 21, 22, of 1993, failing to advise the Plaintiff about the state laws that were violated, failing to advise the Plaintiff about the federal laws that were violated, and failing to advise the Plaintiff about the statutes of limitations of the laws that were involved."

(Doc. #1 at ¶ 18). With regard to PS&E, the complaint included similar allegations. (*Id*. at ¶ 22).

{¶ 5} Along with his complaint, Rayess moved for a stay of proceedings pending the outcome of two related cases, one in the trial court and one in the Ohio Supreme Court. (Doc. #14). Before the time to answer Rayess's complaint expired, PS&E and McNamee sought a fourteen-day extension of time to answer or otherwise respond. (Doc. #24). For his part, Rayess moved for a default judgment. (Doc. #29). Thereafter, PS&E and McNamee moved to dismiss the complaint pursuant to Civ.R. 12(B)(6) on statute-of-limitation grounds. (Doc. #31). Rayess then moved to extend to the present case a confidentiality order that he had obtained in a separate lawsuit against the Commission. (Doc. #34).

{¶ 6} On August 19, 2013, the trial court overruled Rayess's motion to stay the proceedings and sustained the motion to dismiss filed by PS&E and McNamee. After reviewing Rayess's complaint, the trial court found that his legal-malpractice claim was barred by the applicable statute of limitation. Following the trial court's ruling, Rayess moved for exemption from paying court costs. Accompanying his motion was an affidavit in which he averred that he had no job and limited funds. (Doc. #82 at Exh. C). The trial court denied the motion. (Doc. #83). This appeal followed.

{¶ 7} In his first assignment of error, Rayess contends the trial court erred in denying him a default judgment and allowing PS&E and McNamee to file an answer or otherwise respond. The essence of his argument is that the appellees failed to establish good cause for an extension of time, either through an affidavit or otherwise. Therefore, he argues that the trial court should have denied an extension and should have entered a default judgment in his favor.

{¶ 8} Upon review, we find Rayess's argument to be unpersuasive. Under Civ.R.

6(B)(1), the trial court had discretion to extend the filing deadline for "cause shown" because PS&E and McNamee made their request before the time to answer had expired. *Bentley v. Grey Fox Homes, Ltd.*, 184 Ohio App.3d 276, 2009-Ohio-5038, 920 N.E.2d 438, ¶ 9 (2d Dist.). In support of the motion, the appellees' counsel submitted a memorandum explaining:

> Defendants recently retained undersigned counsel to represent their interests in this matter; however, undersigned counsel has been unable to obtain and fully review the documents associated with this aged matter and meet with Defendants due to the press of business, including but not limited to trial, travel, and out-of-office depositions. Undersigned counsel is, of course, making this case a priority and anticipates being able to file an answer or other response to Plaintiff's Complaint on or before July 25, 2012. This request is reasonable, not requested to delay the proceedings, and does not prejudice Plaintiff.

(Doc. #24 at 2).

{¶ 9} Having been provided with the foregoing explanation, the trial court did not abuse its discretion in allowing the appellees to respond to the complaint by moving for dismissal on July 25, 2012. We are unconvinced that the lack of a supporting affidavit compelled the trial court to deny an extension of time. The first assignment of error is overruled.

{¶ 10} In his second assignment of error, Rayess claims the trial court erred in denying his motion to extend a confidentiality order that had been issued in another case. Once again, we see no abuse of discretion. Rayess had obtained the confidentiality order in a separate case he had filed against the Educational Commission for Foreign Medical Graduates. PS&E and McNamee were not parties to that lawsuit. We reject Rayess's argument that PS&E and McNamee were "in

privity" with the Commission because they were represented by the same law firm while defendants in separate suits. Finally, we note that the trial court's dismissal of the present action on statute-of-limitation grounds essentially rendered any confidentiality issue in this case moot. The second assignment of error is overruled.

{¶ 11}  In his third assignment of error, Rayess argues that the trial court erred in sustaining the appellees' Civ.R. 12(B)(6) motion to dismiss on statute-of-limitation grounds. He acknowledges that the limitation period for legal malpractice is one year under R.C. 2305.11(A). He argues, however, that the one-year period did not begin to run until a cognizable event occurred on June 3, 2010. According to Rayess, the cognizable event was  the Montgomery County Common Pleas Court's dismissal of a lawsuit he had filed against the Educational Commission for Foreign Medical Graduates.  Rayess claims he timely filed his legal-malpractice action exactly one year later on June 3, 2011 before voluntarily dismissing it without prejudice and then re-filing on June 12, 2012.

{¶ 12}  "[U]nder R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398, 401 (1989). "A statute of limitations defense is an affirmative defense, per Civ.R. 8(C), that ordinarily cannot be the basis of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim on which relief may be granted. An exception exists when the complaint demonstrates the statute of limitations violation."

(Citations omitted) *Gessner v. Vore*, 2d Dist. Montgomery No. 22297, 2008-Ohio-3870, ¶ 13; *see also Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11 ("A motion to dismiss based upon a statute of limitations may be granted when the complaint shows conclusively on its face that the action is time-barred.").

**{¶ 13}** Here Rayess's complaint established that his legal-malpractice action was barred by the one-year statute of limitation. The complaint alleged that his attorney-client relationship with PS&E and McNamee ended on January 4, 1994. (Doc. #1 at ¶ 7). Therefore, the statute of limitation expired on January 4, 1995 unless a cognizable event occurred later. As set forth above, the malpractice alleged in the complaint included: (1) improper preparation of a complaint letter, (2) failing to investigate, or to advise Rayess to investigate, the University of Cincinnati's role in administering the examination, (3) failing to tell him about state and federal laws that were violated during the testing incident, and (4) failing to advise him about the statutes of limitation applicable to those laws. (Doc. #1 at ¶ 18, 22).

**{¶ 14}** With regard to the letter written by McNamee, the complaint alleged that it contained a factual error in line ten. (*Id*. at ¶ 4). On appeal, Rayess effectively waives or withdraws any malpractice claim based on this error. He notes that the error involved one word, that McNamee later corrected it, and that he "was not harmed in any way due to that one word typographical error."[1]   (Appellant's brief at 24-25).

**{¶ 15}** The next act at issue involved the appellees' alleged non-investigation of the University of Cincinnati's role in administering the examination. Rayess's complaint alleged,

---

[1] In opposition to the motion to dismiss, Rayess provided the trial court with a copy of the letter. The factual error at issue involved McNamee stating that Rayess had practiced orthopedic surgery overseas for three years rather than three and one-half years. (Doc. #52).

however, that "[i]n November of 1995, Plaintiff, on his own, conducted an investigation that resulted in discovering that ECFMG administered the United States Medical Licensing Exam Part 1 to the Plaintiff on September 21 & 22, 1993 through its subcontractor the University of Cincinnati." (Doc. #1 at ¶ 9). Even if PS&E and McNamee somehow acted negligently in failing to discover the university's role in the examination, Rayess himself made that discovery in November 1995. His independent discovery that the university served as a subcontractor constituted a cognizable event for any claim involving the appellees' non-investigation of the university's role in the testing process.

{¶ 16} The final two acts of alleged malpractice involved PS&E and McNamee not telling Rayess about state and federal laws that were violated during the testing incident and not advising him about the applicable statutes of limitation. Rayess's complaint alleged, however, that he pursued a discrimination lawsuit against the University of Cincinnati in 1996 based on the testing incident and that the university responded with a Civ.R. 12(B)(6) motion, claiming that he "filed his charge of discrimination late." (*Id*. at ¶ 11). According to the complaint, Rayess responded to that motion by arguing "that the attorneys he consulted with, among them Cynthia P. McNamee, did not advise him earlier to file a charge of discrimination." (*Id*.). Rayess's complaint further alleged that the U.S. Sixth Circuit Court of Appeals upheld the dismissal of his lawsuit against the university. Paragraph twelve of his complaint even quoted the following language from the Sixth Circuit's decision: "Rayess also argues in his brief that any failings in his pursuit of a remedy can be ascribed to various attorneys he consulted. An allegation of ineffective assistance by private counsel in a civil case is not a basis for overturning a judgment." (*Id*. at ¶ 12).

{¶ 17} Rayess's filing of a lawsuit against the University of Cincinnati based on the

testing incident, his argument therein that counsel had not advised him to file earlier, and the dismissal of the lawsuit on untimeliness grounds (with comments by the Sixth Circuit about ineffective assistance of counsel) plainly establish Rayess's awareness, or belief, that he might have legal claims related to the testing incident and his awareness that statute-of-limitation problems might exist. Under these circumstances, Rayess reasonably was put on notice to pursue possible remedies against the appellees. We do not believe it was necessary for him to identify every potential cause of action. Nor was it necessary for him to know the limitation period applicable to every potential cause of action. It was enough for Rayess to know, or believe, that he had viable legal claims, that the statute of limitation posed a barrier, and that the appellees had not advised him of these facts. That constituted a secondary cognizable event. Indeed, the defense raised in that litigation is precisely the type of information that Rayess's malpractice complaint alleges PS&E and McNamee failed to provide.

{¶ 18} Rayess's complaint also alleged that he filed a lawsuit against the Educational Commission for Foreign Medical Graduates in September 2008 and re-filed it in October 2009. (*Id*. at ¶ 14). Additionally, according to the complaint he "consulted with several attorneys" between 1993 and 2009. (*Id*.). Finally, Rayess's complaint alleged that his lawsuit against the Commission was dismissed on June 3, 2010 "due to the assertion that the court lack[ed] jurisdiction over [his] claims because the statutes of limitations for his claims under breach of oral contract and tort have run." (*Id.* at ¶ 16). Rayess claims the June 3, 2010 judgment in his lawsuit against the Commission constituted a cognizable event triggering the one-year statute of limitation for his legal-malpractice complaint. We disagree.

{¶ 19} As set forth above, Rayess's earlier pursuit of discrimination charges against the

University of Cincinnati and his corresponding discovery of untimeliness problems reasonably should have put him on notice to pursue possible remedies. But even if we accept Rayess's argument that the malpractice statute of limitation did not begin to run then, we remain unpersuaded that the cognizable event was the June 3, 2010 judgment dismissing his lawsuit against the Commission.

{¶ 20} Rayess's complaint in this case acknowledged that the June 3, 2010 judgment resulted from "the assertion" of a statute-of-limitation defense by the Commission. (*Id*. at ¶ 16). For the trial court to dismiss the case based on the statute of limitation, that affirmative defense necessarily had to have been "asserted" prior to June 3, 2010. In other words, Rayess's complaint makes clear that the Commission put him on notice of the statute-of-limitation problem by raising it *sometime before* the court's June 3, 2010 judgment dismissing the case. We see no reason why the Commission's assertion of a statute-of-limitation defense prior to June 3, 2010 would not constitute a third cognizable event for purposes of a malpractice action against PS&E and McNamee. As noted above, Rayess did not originally file the present malpractice action until June 3, 2011. Therefore, his complaint makes clear that he filed it more than one year after the latest possible cognizable event.

{¶ 21} In reaching the foregoing conclusion, we note that "[a] 'cognizable event' is an event that places a reasonable person on notice that a 'questionable legal practice may have occurred' and the person might need to pursue remedies against his attorney." *Deutsch v. Keating, Muething & Klekamp, L.L.P.*, 2d Dist. Montgomery No. 20121, 2005-Ohio-206, ¶ 17. The Tenth District has recognized that "the focus is on what the plaintiff knew or should have known, *and certainty or a judicial determination as to the validity of the statute of limitations defense is not*

*necessary.*" (Emphasis added) *Burzynski ex rel. Estate of Halevan v. Bradley & Farris Co., L.P.A.*, 10th Dist. Franklin No. 01AP-782, 2001 WL 1662042, *4 (Dec. 31, 2001).

**{¶ 22}** At an absolute minimum, the Commission's assertion of a statute-of-limitation affirmative defense in Rayess's 2008 and 2009 lawsuit against it should have put him on notice of a potential legal-malpractice action. It was not necessary to wait until the actual dismissal of that lawsuit on statute-of-limitation grounds for the legal-malpractice statute of limitation to begin running. *See*, *e.g.*, *Jackson v. Greger*, 2d Dist. Montgomery No. 23571, 2010-Ohio-3242, ¶ 34 ("[T]he trial court did not err in holding that the City of Kettering's assertion of collateral estoppel in its answer would have placed a reasonable person on notice of a need to pursue possible remedies against her former attorney for the alleged injury. Jackson should have filed her legal malpractice action within one year after November 2, 2001, when the City of Kettering asserted the defense of collateral estoppel in its answer."); *Burzynski* at *4 ("The cognizable event, whereby plaintiff either knew or should have known that defendants may have committed legal malpractice resulting in plaintiff's federal claims being barred by the statute of limitations, occurred no later than July 10, 1998, when the Secretary of Defense filed his answer to plaintiff's federal court complaint and raised the statute of limitations as an affirmative defense."); *Smith v. Barclay*, 10th Dist. Franklin No. 11AP-798, 2012-Ohio-5086 (finding that the statute of limitation on the plaintiff's legal-malpractice claim began to run when a medical-malpractice defendant moved for summary judgment on statute-of-limitation grounds, not when the medical-malpractice action was dismissed); *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, ¶ 18 ("As noted by the court of appeals, the statute of limitations may have been triggered before the United

States District Court entered summary judgment in the Section 1983 action, if Jackson had learned the effect of her guilty plea prior to that time."); *McDade v. Spencer*, 75 Ohio App.3d 639, 642, 600 N.E.2d 371 (10th Dist.1991) (finding that the statute of limitation for malpractice began running when the appellant was served with a contempt motion for non-compliance with a settlement agreement, not when he later was held in contempt); *Sesto v. Perduk*, 9th Dist. Summit No. 23797, 2008-Ohio-664, ¶ 14 ("Having rejected the Sestos' argument that their claim did not accrue until their tort suit was dismissed, we must determine the date that the claim accrued. We find that as a matter of law, the latest the Sestos' claim could have accrued was December of 2004. In October 2004, both defendants in the tort suit moved to dismiss the matter on the grounds of the statute of limitations. In December of 2004, the Sestos contacted a second attorney, Boyle, to determine why their tort suit was not proceeding. At that time, an examination of the filings would have revealed the error in the legal work conducted by Perduk and Martin."); *Deutsch* at ¶ 18 ("Under the facts of this case, the cognizable event occurred at the latest on April 28, 2000, when the brief in support of appellant's motion to vacate was filed. Appellant's legal malpractice complaint alleged that Keating failed to object to the arbitrability of Gallon's quantum meruit claim. The April 28, 2000 brief, which appellant saw before it was filed, argued, inter alia, that Gallon's quantum meruit claim was not arbitrable.").[2]

{¶ 23}   For the foregoing reasons, we see no error in the trial court's dismissal of Rayess's

---

[2]Parenthetically, we note that *Zimmie v. Calfee, Halter and Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), is not contrary to our analysis above. In *Zimmie*, the Ohio Supreme Court held that "the trial court's invalidation of [an] antenuptial agreement was a cognizable event which should have alerted a reasonable person that a questionable legal practice may have occurred." *Id.* at 58. The issue in that case, however, was whether the cognizable event was the trial court's ruling or whether the statute of limitation did not commence until all appellate remedies had been exhausted. The *Zimmie* court did not hold that a cognizable event could not occur before a judicial decision is rendered. *See Burzynski* at *6 (recognizing that *Zimmie* did not address whether the filing of an answer could serve as a cognizable event).

legal-malpractice complaint against PS&E and McNamee on statute-of-limitation grounds. Accordingly, his third assignment of error is overruled.

**{¶ 24}** In his final assignment of error, Rayess challenges the trial court's denial of his motion for exemption from court costs. He claims the trial court abused its discretion in denying the motion without specifying a reason where he provided an affidavit and advised the trial court that he had been exempted from paying court costs in other cases.

**{¶ 25}** "'While courts traditionally waive filing fees and costs for indigent persons in order to promote the interests of justice, it is within the court's discretion whether indigency status is proper in a particular case. The trial judge may consider whether a litigant has caused the court's limited resources to be expended needlessly in the past by filing numerous, repetitious, or frivolous complaints, whether the affidavit of indigency includes sufficient information concerning the litigant's financial condition, whether additional information is required, and whether the affidavit of indigency appears to be reasonable under conditions then existing.'" (Citations omitted.) *Galluzzo v. Braden*, 2d Dist. Champaign No. 2011 CA 30, 2012-Ohio-3980, ¶ 11.

**{¶ 26}** Although the trial court did not recite the basis for its decision, the trial court reasonably could have found his affidavit deficient. The August 22, 2013 affidavit alleged that Rayess had lost his job in May 2009 and was not working. The affidavit did not address why Rayess, who holds a medical degree, had not obtained employment in more than four years or what steps he had taken to do so. The affidavit also acknowledged that Rayess received "public assistance" and had "limited savings" but did not identify the amount of either. Under these circumstances, we cannot say the trial court abused its discretion in denying his motion for exemption from court costs. The fact that other courts have exempted him in the past did not compel the trial court to do so here. The fourth assignment of error is overruled.

**{¶ 27}**  The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

M. Bassem Rayess
Neil F. Freund
Lindsay M. Johnson
Hon. Michael W. Ward
(sitting for Gregory F. Singer)