[Cite as *Cain Ridge Beef Farm, L.L.C. v. Stubbins, Watson, Bryan & Witucky, LPA*, 2023-Ohio-4727.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MONROE COUNTY

CAIN RIDGE BEEF FARM, LLC et al.

Plaintiffs-Appellants,

v.

STUBBINS, WATSON, BRYAN & WITUCKY, LPA,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MO 0006**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2021-196

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Ethan Vessels*, Fields, Dehmlow & Vessels, LLC, for Plaintiffs-Appellants and

*Atty. Jonathan H. Krol and Atty. Steven A. Chang,* Reminger Co., LPA, for Defendant-Appellee.

Dated: December 22, 2023

**Robb, J.**

{¶1} Appellants, Cain Ridge Beef Farm, LLC, and Mark and Terri Milosavljevic, appeal the trial court's decision granting Appellee, Stubbins, Watson, Bryan & Witucky, LPA, summary judgment. The court found Appellants' professional negligence complaint was filed beyond the one-year statute of limitations for legal malpractice. Appellants argue the trial court erred as a matter of law in its determination as to when the statute began to run. They claim the statute did not begin to run until September of 2020 when the first adverse legal decision was rendered against them.

{¶2} For the following reasons, Appellants' first assigned error lacks merit, and as such, we affirm.

## Statement of the Case

{¶3} Appellants filed suit on May 28, 2021 against Stubbins, Watson, Bryan & Witucky, LPA and the estate of Mark Stubbins for legal malpractice. Mark and Terri Milosavljevic are the sole owners of Cain Ridge Beef Farm, LLC (Cain Ridge). The Milosavljevics and Cain Ridge retained the decedent and his law firm, in part, to ensure the abandonment of mineral rights underlying a 95-acre tract they owned. Appellants claim the decedent made errors during the representation in drafting legal documents necessary to ensure the mineral right claims of others were abandoned under Ohio's Dormant Mineral Act. (May 28, 2021 Complaint.)

{¶4} The abandonment proceedings ended with an appeal to this court in which we found Appellants' efforts were unsuccessful because the legal documents did not comply with the ODMA in light of the fact that the Milosavljevics were named as surface owners when they were not the owners. Instead, the Milosavljevics had recently conveyed the property to their company, Cain Ridge, and thus, the attempt to abandon failed for noncompliance with the ODMA. Our opinion was issued September 30, 2020. We reversed the trial court's judgment in Appellants' favor and held in part:

> [T]he Milosavljevics knew they were not the surface owners because they conveyed the property to Cain Ridge on November 12, 2014, less than three months before they published their notice of intent in the Monroe County Beacon.

\* \* \*

> [A]ppellees' abandonment filings did not comply with the ODMA because they do not identify the correct surface owner. Since appellees' abandonment documents did not comply with the ODMA, the trial court erred when it granted summary judgment in favor of appellees.

*Cain Ridge Beef Farm, LLC v. Fisher*, 7th Dist. Monroe No. 19 MO 0024, 2020-Ohio-4727, ¶ 35-37, appeal not allowed 161 Ohio St.3d 1421, 2021-Ohio-254, 161 N.E.3d 715.

{¶5}    Although this court was certain when reviewing the arguments on appeal about the outcome, the trial court hearing on the same issue ruled the other way.  We summarized the trial court's findings, stating:

> The trial court granted appellees' motion for summary judgment and denied appellants' motion for summary judgment. The trial court held that although Cain Ridge was technically the surface owner, the Milosavljevics were the sole owners and members of Cain Ridge. Therefore, under this court's decisions in *Paul v. Hannon*, 7th Dist. Carroll No. 15 CA 0908, 2017-Ohio-1261, and *Jefferis Real Estate Oil and Gas Holdings, LLC v. Schaffner Law Offices, L.P.A.*, 7th Dist. Belmont No. 17 BE 0042, 2018-Ohio-3733, appellees substantially complied with the ODMA provisions despite the abandonment filings listing appellees Mark and Terri Milosavljevic as the surface owners.  The trial court also held that appellees complied with all other ODMA provisions and, as a matter of law, appellee Cain Ridge was entitled to the property's oil and gas rights.

*Id.* at ¶ 17.

> Among other arguments, appellants claimed [in their summary judgment motion] that appellees did not exercise reasonable diligence under the ODMA in attempting to identify the current interest holders. They also argued that the ODMA required the surface owner to perform the abandonment procedure. During the abandonment procedure, appellee Cain Ridge was the surface owner of the property. But it was the Milosavljevics who completed the abandonment procedure.

*Id.* at ¶ 16.

Case No. 23 MO 0006

**{¶6}** By stipulation, the parties to the instant case agreed to dismiss the estate of Mark Stubbins as a party defendant. (July 6, 2021 Stipulation of Dismissal.) Attorney Stubbins passed away on August 8, 2018.

**{¶7}** Appellees denied professional negligence in their answer and raised affirmative defenses, including statute of limitations. Appellees then moved for judgment on the pleadings claiming the allegations were barred by the one-year statute of limitations. (September 2, 2021 Motion.)

**{¶8}** Appellants opposed, claiming in part it was illogical to conclude they were required to file suit against their attorney before an adverse judgment was rendered against them. Thus, the parties disagreed about when the one-year statute began to run in light of the applicable facts. (September 7, 2021 Opposition.) Appellees filed a reply in support of their motion, and the trial court overruled their motion for judgment on the pleadings. (November 10, 2021 Journal Entry.)

**{¶9}** Thereafter, Appellants moved for partial summary judgment in their favor. They claimed summary judgment was warranted on the issues of breach and proximate cause. Thus, they sought a decision on the merits of their malpractice claim and asked the trial court to hold the trial only on the damages they sustained from Appellees' malpractice. (December 13, 2021 Motion.)

**{¶10}** Appellees filed a combined motion in opposition and motion for summary judgment in their favor in October of 2022. First, they again alleged Appellants' cause of action was time-barred. Second, they claimed Appellants lacked an expert witness to support their claims. Last, Appellees alleged there was a genuine issue of fact as to whether Appellants were comparatively negligent regarding the decedent's drafting error. Appellees alleged Appellants were well aware they were not owners of the surface estate at the time they executed the flawed legal documents, but despite their knowledge, Appellants failed to alert their attorney about the error, which was repeated in other documents. (October 28, 2022 Combined Motion.)

**{¶11}** Appellants opposed Appellees' combined motion and claimed the statute began to run when an actual injury occurred, i.e., September 30, 2020, not when they knew about their attorney's error and a "potential problem." (November 18, 2022 Opposition & Reply.)

**{¶12}** Appellees filed a reply in support of their position.

**{¶13}** Terri testified in her September 2022 deposition that she has been involved in running her family's farm since 1977. She and her husband retained Appellees' law firm to do estate planning work. One lawyer helped them create two limited liability companies and another helped them with the mineral rights underlying their farm. She does not recall which attorney did what work. She said they hired the firm to "clear the mineral rights" so that "they were ours[.]" (September 9, 2022 Deposition of Terri Milosavljevic, 1-20.)

**{¶14}** Terri and her husband had previously leased the mineral rights to CNX in 2012. She does not recall any issues with the title to the property at that time. Appellees' firm created two LLCs for the Milosavljevics. One company was to own the mineral rights and the other was to own the surface rights. She and her husband conveyed their mineral interests to the Mineral LLC on November 12, 2014. Thereafter, the royalties from the leased rights were paid to this Mineral LLC.

**{¶15}** Terri agreed that she and her husband consulted with another law firm in September of 2017 after CNX "had informed" them "that they would only be receiving 50 percent of our royalties." (September 9, 2022 Deposition of Terri Milosavljevic, 36.) She did not recall at the time of her deposition how she learned about this. This was the first they had learned about it, and as a result, they contacted another law firm "to find out why we were only receiving 50 percent of the royalties." She did not have any doubts at that time about the effectiveness of the abandonment process performed by Appellees' firm. (Deposition of Terri Milosavljevic, 40-41.)

**{¶16}** Terri also denied knowing that the abandonment process and documents were referenced in the lawsuit they eventually filed against the adverse claimants regarding their claimed ownership of the mineral rights. (Deposition of Terri Milosaveljic, 42-44.) She agreed she was aware in April of 2018 that Appellants' claim to the "other half of the mineral interests was contested." She was likewise aware that CNX had a concern that she and her husband did not own fifty percent of the mineral interests. That is what prompted their underlying lawsuit. (Deposition of Terri Milosavljevic, 44-45.)

**{¶17}** While she knew there were adverse claims and the lawsuit was filed as a result, Terri testified she was *not* aware during the time the underlying lawsuit was

pending that the arguments were about the validity of the abandonment documents prepared by Appellee's law firm.   Terri said she did not know the specifics of the lawsuit; she denied knowing the legal arguments raised; and instead, Terri explained she knew "we won the lawsuit. I just depended on our lawyers." (Deposition of Terri Milosavljevic, 49-52.)

**{¶18}** According to Terri, she became aware there was a problem when the trial court's decision was reversed on appeal.  This is when she claims she became aware of the problem with the abandonment documents, i.e., on September 30, 2020 when the Seventh District Court of Appeals issued our opinion reversing the trial court.  Terri denied knowing about the nature of the legal arguments made on her behalf during the course of the lawsuit.  She denied knowing there were arguments about the Stubbins' work performed on their behalf.  She admits knowing now, however, that their errors resulted in her loss of certain mineral rights.  (Deposition of Terri Milosavljevic, 64-84.)

**{¶19}** Appellant Mark testified he is unable to read, and he relied on his wife Terri and their attorneys to handle the legal matters.  (Deposition of Mark Milosavljevic)

**{¶20}** There is nothing in evidence showing whether Appellants were informed by CNX about the reason for its decision to withhold 50% of the royalties.  There is likewise nothing establishing where the royalty payments were going during the pendency of the underlying litigation about the abandonment of the mineral rights.

**{¶21}** The trial court in this case subsequently granted Appellee summary judgment and denied Appellants' motion for partial summary judgment.  (February 13, 2023 Summary Judgment Decision.)  The trial court found in part that Terri acknowledged in her deposition testimony that she knew at the time she signed the abandonment documents they were no longer the record owners of the real property at issue.  The court found Appellants had "clear knowledge of these purported errors at least two (2) years before they filed this within lawsuit * * *."  Additionally, the court found "there were multiple events which took place from September 2016 – September 2019 which put Plaintiffs on constructive notice of the facts relating to the problematic abandonment."  (February 13, 2023 Summary Judgment Decision.)

**{¶22}** The court further held the facts showed Appellants were aware for more than three years that a group of adverse claimants asserted ownership rights over the

Appellants' mineral interests, and the oil and gas company also withheld the corresponding lease payments as a result of these adverse claims. (February 13, 2023 Summary Judgment Decision.)

**{¶23}** Furthermore, the trial court found the statute of limitations was not tolled by a pending declaratory judgment action. Instead, it indicated Appellants should have filed suit or entered a tolling agreement. Because they did not, the trial court found the time to do so lapsed. Last, the trial court held Appellants' attorney-client relationship ended as a matter of law when their prior attorney died. (February 13, 2023 Summary Judgment Decision.)

**{¶24}** Appellants raise two assignments of error on appeal.

<u>First Assignment of Error: Commencement of Statute of Limitations</u>

**{¶25}** Appellants' first assignment of error contends:

"The trial court erred in granting the defendants' motion for summary judgment based on the statute of limitations."

**{¶26}** Appellate courts review decisions awarding summary judgment de novo. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 191, 699 N.E.2d 534 (8th Dist.1997). We review the trial court's decision independently and without deference, pursuant to the standards in Civ.R. 56(C). *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

**{¶27}** Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion adverse to the nonmoving party. *Holliman v. Allstate Ins. Co.*, 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant meets this burden, the burden shifts to the nonmoving party to establish a genuine issue of material fact exists for trial. *Id.*

> [W]e must be mindful that "'[s]ummary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try.

It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. * * * ' " (Citations omitted.) *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 2, 24 O.O.3d 1, 2, 433 N.E.2d 615, 616, quoting *Vetovitz Bros., Inc. v. Kenny Constr. Co.* (1978), 60 Ohio App.2d 331, 332, 14 O.O.3d 292, 293, 397 N.E.2d 412, 414.

*Osborne v. Lyles*, 63 Ohio St.3d 326, 333, 587 N.E.2d 825 (1992).

**{¶28}** Furthermore, "the trial court is not permitted to weigh the evidence or choose among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, 413 N.E.2d 1187 (1980). Rather, the court must evaluate the evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Id.*" *Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, 893 N.E.2d 245, ¶ 10 (9th Dist.).

**{¶29}** The statute of limitations for legal malpractice is one year "after the cause of action accrued." R.C. 2305.11(A). The parties disagree about *when* the cause of action accrued and the application of the "discovery rule" to the facts here. "Application of a statute of limitations presents a mixed question of law and fact; when a cause of action accrues is a question of fact, but in the absence of a factual issue, application of the limitations period is a question of law." (Citations omitted.) *Schmitz v. Natl. Collegiate Athletic Assn.*, 155 Ohio St.3d 389, 2018-Ohio-4391, 122 N.E.3d 80, ¶ 11.

**{¶30}** When a cause of action for legal malpractice accrues is not statutorily defined and it is a fact-intensive determination. This issue has been thoroughly vetted by the Ohio Supreme Court in a series of decisions. In *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 57, 538 N.E.2d 398 (1989), the Ohio Supreme Court recites and implements the analyses of prior Supreme Court cases dealing with medical malpractice claims before setting forth the following test.

> [A]n action for legal malpractice accrues and *the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible*

*remedies against the attorney* or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.' *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus, citing *Omni-Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941. *Zimmie* and *Omni–Food* require two factual determinations:  (1) <u>When should the client have known that he or she may have an injury caused by his or her attorney?</u> and (2) When did the attorney-client relationship terminate?  The latter of these two dates is the date that starts the running of the statute of limitations. *Zimmie,* syllabus; *Omni–Food,* paragraph one of the syllabus.

(Emphasis added.) *Smith v. Conley,* 109 Ohio St.3d 141, 846 N.E.2d 509, 2006-Ohio-2035, ¶ 4.

**{¶31}** In *Zimmie*, the Supreme Court recited with approval certain factors to employ when determining the date of injury, as detailed by an earlier Supreme Court medical malpractice case:

We adopted an approach that requires an inquiry into the particular facts of the action and the following determinations:  when the injured party became aware of, or should have become aware of, the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional * * * service previously rendered him; and whether such condition would put a reasonable person on notice of the need for further inquiry as to the cause of such condition.

*Id.* at 57, citing *Hershberger v. Akron City Hosp.*, 34 Ohio St.3d 1, 516 N.E.2d 204 (1987). *Zimmie* also elaborated on the  "extent and seriousness of his condition" language from *Hershberger*, and explained:

a [person] becomes or should become aware of the extent and seriousness of his injury when there is a "cognizable event" which does or should lead the [person] to believe that the condition of which the [person] complains is related to a [legal service] previously rendered to the [person] and where

the cognizable event does or should place the [person] on notice of the need to pursue his possible remedies.

*Zimmie, supra,* citing *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989).

**{¶32}** Upon applying the foregoing to the facts before it, the court in *Zimmie* found the cognizable event triggering the statute of limitations in that case was the date the trial court invalidated the parties' prenuptial agreement. The court explained that was the date Zimmie should have been aware of the injury flowing from his attorney's legal work and the potential need to pursue legal action as a result. *Zimmie* found this date was critical, stating:

> Although Zimmie's damages were not completely ascertainable after the trial court invalidated the antenuptial agreement, Zimmie was appreciably and actually damaged by the trial court decision. After the trial court decision, it is undisputed Zimmie had to make substantial alimony payments to his ex-wife, Kathryn, despite the pending appeals. Additionally, it is further undenied that Zimmie accrued attorney fees litigating the issues of alimony and property division.
>
> * * *
>
> Adopting a rule of law that a client is entitled to exhaust all appellate remedies before the statute of limitations commences * * * would be counter to our holdings in *Hershberger* and its progeny. In these cases, we found that a factual inquiry into the circumstances of a case establishes when the cause of action accrues and the period of limitations commences in a malpractice action.

*Id.* at 58-59. The *Zimmie* Court also suggested that had the parties filed the malpractice complaint while the appeal from the underlying litigation was pending, they could have requested a stay of the malpractice action. *Id.* at 59.

**{¶33}** In *Smith v. Conley, supra,* the Supreme Court found Smith's "cognizable event" triggering the statute of limitations was the date of Smith's conviction. Smith alleged his attorney was negligent when counsel "failed to request a directed verdict and when he failed to offer for admission" certain evidence at trial that would have exonerated him. *Id.* at ¶ 5. The Supreme Court found the date the alleged negligence occurred, i.e.,

the date of Smith's trial was not the date triggering the statute of limitations. Instead, "since Smith's complaint is that Conley's malpractice resulted in a conviction, the date of the conviction is the date that Smith should have known he had an injury caused by Conley." Thus, "the cognizable event that should have put Smith on notice that his attorney may have committed malpractice was his [date of] conviction." *Id*. at ¶ 5.

**{¶34}** Thus, the focus is not on when the negligent act or questionable legal conduct occurred, but on when a reasonable person should have realized an injury may result from his attorney's conduct. The critical question is when should Appellants have known they may have an injury caused by their attorney? *Zimmie,* syllabus.

### The Underlying Litigation

**{¶35}** As stated, Appellants were the surface owners, and they retained Appellees' firm to employ Ohio's Dormant Minerals Act (DMA) to vest title of the previously severed mineral rights in them. The DMA was amended in 2006 to establish a multi-step approach for the merging of severed surface and mineral estates. Successful use of the DMA vests title to the previously severed mineral rights with the surface owner. "It is an understatement that the enactment of the 2006 DMA caused a flurry of litigation and created unforeseen issues and arguments throughout Ohio courts." *Henderson v. Haverfield*, 7th Dist. Harrison No. 21 HA 0005, 2022-Ohio-2194, ¶ 60.

**{¶36}** The prior lawsuit was commenced on April 5, 2018 when Appellants filed a complaint for declaratory judgment against the individuals collectively referred to as the Strauch heirs, who had purported to lease their ownership in the mineral interests underlying Appellants' surface estate to CNX Gas Company, LLC. Appellants were not represented by Appellees in this litigation.

**{¶37}** In August and September of 2019, the Strauch heir defendants moved for summary judgment, arguing in part that the notice of abandonment filed by Appellants (and prepared by Appellees) was defective and did not comply with mandatory provisions. The Strauch heir defendants also alleged Appellants' search did not meet the reasonably diligent search required of them under the DMA, and as such, their notice by publication (prepared by Appellees) was deficient. The Strauch heir defendants also alleged Appellants' notice of abandonment failed to adequately describe the property because it did not include the volume and page number of the vesting deed.

{¶38} Appellants opposed the summary judgment motions against them and claimed governing DMA caselaw only required "substantial compliance" with these provisions, not strict compliance. Appellants also filed a reply in support in which they continued to allege their documents substantially complied with the applicable DMA provisions and their search was diligent based on the governing standards and resources available at the time. (September 27, 2019 Reply in Support of Summary Judgment.)

{¶39} Plaintiffs' reply in support of their summary judgment motion was filed in the underlying litigation on September 27, 2019. It was introduced during Terri's deposition as Defendants' Exhibit 18, in addition to other pleadings in the underlying case. In her testimony, Terri denied knowing the factual assertions contained in the reply. She also denied knowledge of the legal arguments raised by her attorneys in the reply at the time it was filed. Notwithstanding, the September 27, 2019 reply filed by Appellants states in part: "Plaintiffs acknowledge, and have never hid the fact that when the Notice of Abandonment, Affidavit, [and] Notice of Failure were served and recorded, the surface of the Property was technically owned by Cain Ridge, although the abandonment documents were signed by the Milosavljevics without reference to this fact." Appellants then state in their reply that this was a clerical mistake, which was not caught by them or their attorney before they signed the documents. (September 27, 2019 Reply in Support of Summary Judgment 3-4.)

{¶40} On November 13, 2019, the trial court in the underlying case issued its judgment and agreed with Appellants. It found the Milosavljevics had substantially complied with the applicable provisions. It also found, based on applicable precedent, the Milosavljevics successfully abandoned the Strauch interests, and it quieted title to 100% of the mineral interests in Appellants' favor. The court found the Strauch leases with CNX were null and void and no genuine issue of fact remained for trial.

{¶41} Because there was no dispute as to the underlying facts, the accrual date was a question of law.

{¶42} As stated, Terri testified that she and her husband consulted another law firm in September of 2017 after CNX informed them they would only be receiving 50% of their royalties regarding the mineral interests under their surface estate. (Deposition of Terri Milosavljevic, 36.) She denied knowing the nonpayment of royalties had anything

to do with Appellee's work or errors in the drafting of the abandonment documents until we reversed the trial court's decision in their favor. This court issued our decision in September of 2020. Appellants urge us to find this was the date of the cognizable event, i.e., the date of the first adverse legal decision against them and the date of their injury.

**{¶43}** However, Appellants acknowledged Appellee's mistake in a motion in the prior litigation on September 27, 2019. Moreover, they stopped receiving 50% of the royalties in September of 2017. Appellants should have comprehended the potential gravity of the error when they were defending the summary judgment motions and acknowledged the legal documents prepared by Appellees contained mistakes. This information coupled with the fact that CNX had withheld 50% of the royalties two years before should have put a reasonable person on notice that the injury, suspension of royalty payments, possibly stemmed from his attorney's conduct, clerical errors in the abandonment notices. Thus, in light of the facts, we conclude that at this juncture, September 27, 2019, Appellants should have been cognizant of the need to explore whether a cause of legal malpractice existed against Appellees. At this point, Appellants should have known they "may have an injury caused by [their] attorney." *Zimmie, supra.*

**{¶44}** Although Appellants had not yet lost on the merits in a court of law and there was presumably the ability to recover the withheld royalty payments, this is not the test. The focus of the discovery rule is not when an adverse legal decision is rendered.

**{¶45}** Further, the Supreme Court in *Zimmie* suggested a wronged client should file suit and stay the malpractice action pending a resolution of the underlying case. *Id.* at 58-59. The fact that Appellants still had a likelihood of success on the merits in the underlying case and won on the merits at the trial court level is not determinative. Under Ohio law, a party need not have an adverse judicial decision rendered against them to start the malpractice clock.

**{¶46}** In light of Appellants' acknowledgments in September of 2019, we find that this fact, coupled with the litigation springing from CNX's decision to withhold 50% of the royalties, should have made a reasonable person aware at this juncture that their attorney's conduct may have caused them injury. *Zimmie, supra.* We disagree with Appellants' argument that CNX's decision to withhold royalty payments pending resolution of the underlying litigation was not an injury for malpractice purposes. Thus,

we find the cognizable event here occurred no later than September 27, 2019. One year later was September 27, 2020.

**{¶47}** To the extent the trial court found the statute began to run *before* it was evident why CNX withheld certain royalty payments or *before* Appellants should have been aware of the substance of the legal arguments in the abandonment litigation, we disagree. When construing the facts in Appellants' favor, it is unclear whether Appellants should have known why the royalty payments were withheld until the issues were flushed out in the underlying litigation.

**{¶48}** Last, we note there are no arguments regarding when Appellee's representation of Appellants ended. Notwithstanding, it is undisputed that Attorney Stubbins passed away on August 8, 2018. The trial court found the parties' relationship ended on this date and one year later was August 8, 2019. Thus, because this date preceded the cognizable event, it does not affect the timeliness of Appellants' complaint.

**{¶49}** Based on the foregoing, the lawsuit filed in this case against Appellee on May 28, 2021 was time-barred. Appellants' first assigned error lacks merit and is overruled.

<u>Second Assignment of Error: Malpractice</u>

**{¶50}** Appellants' second alleged error asserts:

"The trial court erred in failing to grant the plaintiffs' motion for partial summary judgment."

**{¶51}** Appellants claim the trial court should have granted them summary judgment on their malpractice claim and set the case for trial on their resulting damages. However, in their reply brief, Appellants agree with Appellee and acknowledge this court generally does not address arguments for the first time on appeal. Thus, they urge we reverse and remand for the trial court to address their arguments.

**{¶52}** However, because we agree with the trial court's decision finding Appellants' cause of action was time-barred, this assignment of error is moot. *Warner v. Palmer*, 7th Dist. Belmont No. 18 BE 0012, 2019-Ohio-4078, ¶ 28; *Shelko v. Dolinar*, 11th Dist. Lake No. 88-L-13-161, 1990 WL 93127, *5 (June 29, 1993) (Ford, J., dissenting) (defining moot as having no practical effect on the existing controversy); App.R. 12(A)(1)(c).

<u>Case No. 23 MO 0006</u>

## Conclusion

**{¶53}** Appellants' first assignment of error lacks merit and is overruled. Moreover, we decline to reach the merits of Appellants' second assigned error. The trial court's decision is affirmed.

Waite, J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**